# No. 26-156

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

IN RE GRAND JURY SUBPOENAS TO THE OFFICE OF
THE NEW YORK STATE ATTORNEY GENERAL

*Petitioner-Appellee*

v.

UNITED STATES OF AMERICA

*Respondent-Appellant*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF NEW YORK

---

**BRIEF OF SOCIETY FOR THE RULE OF LAW, ITS EXECUTIVE DIRECTOR
GREGG NUNZIATA, AND CHARTER MEMBERS DONALD AYER, STUART
GERSON, ALAN RAUL, AND STANLEY TWARDY, JR.
AS *AMICI CURIAE* IN SUPPORT OF PETITIONER-APPELLEE
AND URGING AFFIRMANCE**

---

Christine P. Sun
STATES UNITED DEMOCRACY CENTER
95 Third Street, 2nd Floor
San Francisco, CA 94103
Tel.: (202) 999-9305

Erin H. Flynn
*Counsel of Record*
Maithreyi Ratakonda
STATES UNITED DEMOCRACY CENTER
45 Main Street, Suite 320
Brooklyn, NY 11201
Tel.: (202) 999-9305

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

IDENTITY AND INTEREST OF THE AMICI CURIAE......................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................3

ARGUMENT ..........................................................................................5

    I.    The Constitution and Federal Statutes Grant Congress an Essential Role in the Lawful Appointment of U.S. Attorneys. ............................5

        A.    Congress Has Retained Its Role Under the Appointments Clause for Filling U.S. Attorney Vacancies. .............................6

        B.    Federal Statutes Governing Interim and Acting Appointments Protect Against Unilateral Appointments. .................................10

    II.    The District Court Correctly Held that the Executive Branch Used Unlawful Maneuvers to Install Sarcone as Acting U.S. Attorney. ......14

    III.    The Administration's End-Run Around the Constitution and Governing Statutes Undermines the Rule of Law by Emboldening Politicized Investigations and Prosecutions and Chilling Opposition. ...................................................................................18

CONCLUSION...................................................................................23

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Berger v. United States*, 295 U.S. 78 (1935) ................................................8

*Bowsher v. Synar*, 478 U.S. 714 (1986)................................................5

*Edmond v. United States*, 520 U.S. 651 (1997) ................................ 6, 7, 8

*Freytag v. Comm'r*, 501 U.S. 868 (1991)................................................6

*In re Grand Jury Subpoenas Bd. of Gov.'s of the Fed. Rsrv. Sys. v. United States*, No. 1:26-mc-12, 2026 WL 710202 (D.D.C. Mar. 13, 2026) ................................................23

*Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748 (2025)........................................7

*Lucia v. SEC*, 585 U.S. 237 (2018)................................................6

*Morrison v. Olson*, 487 U.S. 654 (1988) ................................................6

*Myers v. United States*, 272 U.S. 52 (1926) ................................................7

*New York v. National Rifle Ass'n*, Index No. 451625/2020 (Sup. Ct. N.Y. Cnty.) ................................................20

*New York v. Trump*, Index No. 452564/2022 (Sup. Ct. N.Y. Cnty.)........................20

*Ryder v. United States*, 515 U.S. 177 (1995)................................................6

*United States v. Comey*, 810 F. Supp. 3d 768 (E.D. Va. 2025), *appeal filed* No. 25-4674 (4th Cir.)................................................18

*United States v. Garcia*, No. 2:25-cr-00227, 2025 WL 2784640 (D. Nev. Sept. 30, 2025), *appeal filed* No. 25-6229 (9th Cir.)................... 18, 19

*United States v. Germaine*, 99 U.S. 508 (1878) ................................................7

*United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025) ................................ passim

*United States v. James*, 810 F. Supp. 3d 752 (E.D. Va. 2025), *appeal filed* No. 25-4673 (4th Cir.)................................................18

*United States v. Naviwala*, No. 2:24-cr-99, 2026 WL 658885 (D.N.J. Mar. 9, 2026) ................................ 17, 19

ii

*United States v. Perkins*, 116 U.S. 483 (1886) ........................................................8

*United States v. Ramirez*, 807 F. Supp. 3d 1086 (C.D. Cal. 2025) .................. 18, 19

*United States v. Ramirez-Martinez*, No. 1:22-cr-01721, 2026 WL 113431 (D.N.M. Jan. 14, 2026)........................................................19

*Widakuswara v. Lake*, No. 1:25-cv-1015, 2026 WL 638676 (D.D.C. Mar. 7, 2026) ........................................................... 13, 14

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987) ..............................12

**Statutes**

28 U.S.C. § 510..........................................................................................................16

28 U.S.C. § 515..........................................................................................................16

28 U.S.C. § 541...........................................................................................................7

28 U.S.C. § 546 .................................................................................................. passim

28 U.S.C. § 547............................................................................................................8

5 U.S.C. § 3345 ............................................................................................... 12, 13, 17

5 U.S.C. § 3346................................................................................................... 12, 14

5 U.S.C. § 3347................................................................................................... 14, 17

5 U.S.C. §§ 3345-3349d ........................................................................................ 4, 10

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ....................................................................................6, 7

U.S. Const. art. II, § 2, cl. 3 ......................................................................................14

**Other Authorities**

H.R. Rep. No. 110-58 (2007).....................................................................................21

James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187 (2020)..............................................................................................4

Kim Lane Scheppele, *Restoring Democracy Through International Law*, 39 Am. U. Int'l L. Rev. 587 (2024).................................................................22

iii

Robert H. Jackson, U.S. Att'y Gen., Address to the Second Annual
Conference of United States Attorneys: *The Federal Prosecutor*
(Apr. 1, 1940), https://perma.cc/4KS4-YLAJ ......................................... 9, 23

*The Federalist* No. 47 (James Madison)......................................................................5

*The Federalist* No. 48 (James Madison)......................................................................6

*The Federalist* No. 51 (James Madison)......................................................................5

*The Federalist* No. 76 (Alexander Hamilton)..................................................... 5, 7, 9

U.S. Att'y Gen. Griffin B. Bell, Address Before U.S. Dep't of Justice
Lawyers (Sept. 6, 1978), https://perma.cc/XWM7-TPCR ...........................23

iv

## IDENTITY AND INTEREST OF THE AMICI CURIAE[1]

*Amicus curiae* Society for the Rule of Law is a national membership organization of conservative, libertarian, and center-right lawyers, and like-minded constitutionalists, who prioritize the defense of the rule of law, the Constitution, and American democracy above their partisan and policy preferences. The Society was originally founded as Checks & Balances in 2018 by lawyers and jurists who served at the highest levels of government in previous Republican administrations. The Society relaunched in its current form in 2023 with a renewed vision to defend and advance the aforementioned beliefs and to amplify, among other constitutional principles, the separation of powers and each branch's importance as a check and balance on the other branches of government.

The Society's executive director and the four charter members listed below join this brief as *amici* based, in part, on their relevant government service:

Gregg Nunziata is Executive Director of the Society for the Rule of Law. He formerly served as Chief Nominations Counsel to the Senate Judiciary Committee and played a key role in the confirmation proceedings for scores of federal judges

---

[1] No counsel for a party to this case authored this brief in whole or in part, and no party or counsel to a party, or any person other than amici and its counsel, contributed money to fund the preparation or submission of this brief. *Amici* Society for the Rule of Law is a nonprofit organization that has no parent corporation, and no publicly held corporation owns 10% or more of its stock. The views of the Society expressed here do not necessarily reflect those of any individual member.

and executive branch appointees. He also served as policy counsel to the Senate Republican Policy Committee, and as general counsel and domestic policy advisor to Senator Marco Rubio.

Donald Ayer is a former Deputy Attorney General (1989-1990), former Principal Deputy Solicitor General (1986-1988), and former U.S. Attorney for the Eastern District of California (1981-1986).

Stuart Gerson is a former Acting Attorney General (1993) and former Assistant Attorney General for the Civil Division of the U.S. Department of Justice (1989-1993).

Alan Raul served as General Counsel of the U.S. Department of Agriculture (1989-1993), General Counsel of the Office of Management and Budget (1988-1989), and Associate Counsel to President Ronald Reagan (1986-1988). He also served as Vice Chairman of the Privacy and Civil Liberties Oversight Board (2006-2008). His work in the White House involved U.S. Attorney and judicial nominations.

Stanley Twardy, Jr. is a former U.S. Attorney for the District of Connecticut (1985-1991) and was Chief of Staff to Connecticut Governor Lowell P. Weicker, Jr. (1991-1993).

*Amici*'s interest in this case lies in correctly construing and preserving checks and balances and the proper role of Congress, the President, and the courts

2

in the appointment of U.S. Attorneys. Prosecutors wield immense power that should be exercised fairly and impartially. But their power can be—and in the past has been—abused to advance the personal interests of the President, undermining the core foundations of our democracy. Our system of constitutional checks and balances is essential to thwart efforts to install prosecutors who will abuse their power and act corruptly. The administration's brazen attempts to bypass the fundamental system of checks and balances erode the values that *amici* hold dear and that uphold the rule of law: an impartial criminal justice system; free speech; due process; equal protection; and the ability to petition the government. The administration's disregard for the Senate and the separation of powers relevant here, and its attempts to arrogate power and weaponize the criminal justice system, profoundly concern *amici*.

*Amici* file this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2), and all parties have consented to its filing.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The district court correctly held that the Attorney General unlawfully appointed John Sarcone III as acting U.S. Attorney for the Northern District of New York. The administration cannot ignore the Constitution and federal statutes by installing hand-picked loyalists to indefinitely lead U.S. Attorney's offices where the President has not obtained Senate confirmation for his preferred

3

prosecutors. Congress has not relinquished its constitutional role and placed responsibility for U.S. Attorney appointments solely in the Executive Branch. The administration's actions disregard the checks and balances established in the Appointments Clause, 28 U.S.C. § 546(d), and the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. §§ 3345-3349d, and the ultimate authority of the Senate under the Constitution to provide advice and consent for the appointment of U.S. Attorneys.

The administration cannot be permitted to proceed in such a unilateral and unchecked manner, particularly for offices subject to Senate confirmation by consensus understanding since the first Congress in 1789. *See* James A. Heilpern, *Interim United States Attorneys*, 28 Geo. Mason L. Rev. 187, 190-91 (2020). The administration's end-run around our constitutional system imperils the integrity of U.S. Attorney's offices and the fair and impartial administration of justice. Prosecutors wield enormous power for the public good; they should not be weaponized as vehicles for personal retribution accountable to only the President and not the Constitution they serve. Such weaponization denigrates the office of the U.S. Attorney, emboldens politicized investigations and prosecutions, and undermines the rule of law.

This case illustrates the point. The grand jury subpoenas issued to the New York State Attorney General's Office show a President intent on using federal

4

prosecutorial power to prosecute and persecute his perceived political adversaries and to settle scores. The advice and consent process that the Appointments Clause established, and that the First Congress adopted, was specifically designed to prevent "unfit characters" willing to pursue such schemes. *The Federalist* No. 76 (Alexander Hamilton). It is essential that this Court uphold the Constitutional design and the limits that Congress placed on U.S. Attorney appointments. *Amici* urge this Court to affirm the decision below and hold Sarcone's appointment to be unlawful.

## ARGUMENT

**I.    The Constitution and Federal Statutes Grant Congress an Essential Role in the Lawful Appointment of U.S. Attorneys.**

The Constitution establishes three separate and distinct branches of government that interact with each other and that check and balance one another's actions to protect against the abuse of power, to safeguard constitutional rights, and to preserve liberty. *See Bowsher v. Synar*, 478 U.S. 714, 730 (1986); *The Federalist* No. 47 (James Madison). In establishing "the necessary partition of power among the several departments," the Framers envisioned an "interior structure of the government" that would provide "the means of keeping each other in their proper places." *The Federalist* No. 51 (James Madison). The Framers understood that the branches were interrelated, could not function wholly

5

independently, and "should not be so far separated as to have no constitutional control over each other." *The Federalist* No. 48 (James Madison).

As relevant here, "[t]he [Appointments] Clause is a bulwark against one branch aggrandizing its power at the expense of another branch," *Ryder v. United States*, 515 U.S. 177, 182 (1995), and "is among the significant structural safeguards of the constitutional scheme," *Edmond v. United States*, 520 U.S. 651, 659 (1997). The Clause protects "[t]he structural interests" not of each individual branch but "of the entire Republic." *Freytag v. Comm'r*, 501 U.S. 868, 880 (1991). Moreover, the federal statutes governing the appointment of U.S. Attorneys further protect against the unilateral actions of one branch. It is essential that the checks on Executive Branch power established by the Appointments Clause and in federal law be preserved.

A. **Congress Has Retained Its Role Under the Appointments Clause for Filling U.S. Attorney Vacancies.**

The Appointments Clause governs the appointment, upon the President's nomination and "by and with the Advice and Consent of the Senate," of "Officers of the United States," U.S. Const. art. II, § 2, cl. 2, and is "the exclusive means of appointing" such officers, *Lucia v. SEC*, 585 U.S. 237, 244 (2018). The Clause delineates between "principal" and "inferior" officers, *see Morrison v. Olson*, 487 U.S. 654, 670-71 (1988), and permits Congress to adopt methods short of presidential nomination and Senate confirmation for inferior officers, *see United*

6

*States v. Germaine*, 99 U.S. 508, 509-10 (1878); *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 760 (2025). Whereas principal officers must be appointed by the President with the Senate's advice and consent—that is, Congress cannot assign its constitutional responsibility—Congress "by Law" may authorize the President, the head of an executive department, or a court of law to appoint inferior officers without Senate confirmation. U.S. Const. art. II, § 2, cl. 2; *see Edmond*, 520 U.S. at 660; *The Federalist* No. 76 (Alexander Hamilton).

United States Attorneys are inferior officers, *see Myers v. United States*, 272 U.S. 52, 159 (1926), but Congress has *not* authorized their appointment at will or without Senate confirmation. Rather, it has reaffirmed by federal statute its constitutional power to check the Executive Branch: "The President shall appoint, *by and with the advice and consent of the Senate*, a United States attorney for each judicial district." 28 U.S.C. § 541(a) (emphasis added). Appointments are for four-year terms, although incumbents "shall continue to perform the duties of [their] office until" a "successor is appointed and qualifies," *id.* § 541(b), and appointees are subject to the President's removal, *id.* § 541(c).

Moreover, "[t]he head of a department," including the Attorney General, "has no constitutional prerogative of appointment to offices independently of the legislation of [C]ongress, and by such legislation [s]he must be governed, not only in making appointments, but in all that is incident thereto." *United States v.*

7

*Perkins*, 116 U.S. 483, 485 (1886); *see Edmond*, 520 U.S. at 660 (the "default" for both principal and inferior officers is Senate confirmation). Simply put, neither the President nor the Attorney General can bypass Congress and install someone indefinitely as U.S. Attorney—whether in an interim, acting, or *de facto* role.

That Congress has retained the power to exercise the Senate's advice and consent role for U.S. Attorney appointments reflects the important role of that office and Congress's decision that checks and balances for that role are needed to ensure the Executive Branch does not abuse the prosecutorial powers it wields. *See* 28 U.S.C. § 547 (delineating duties of the U.S. Attorney). The Supreme Court has recognized that the U.S. Attorney represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935).

Yet as Attorney General Robert Jackson warned the U.S. Attorneys assembled for their annual conference in the Great Hall of the Department of Justice building in 1940, "[i]f the prosecutor is obliged to choose his cases, it follows that he can choose his defendants. Therein is the most dangerous power of the prosecutor: that he will pick people that he thinks he should get, rather than pick cases that need to be prosecuted." Robert H. Jackson, U.S. Att'y Gen., Address to the Second Annual Conference of United States Attorneys: *The Federal*

8

*Prosecutor* 4 (Apr. 1, 1940), https://perma.cc/4KS4-YLAJ. For this reason, Jackson explained, two branches of government are required for the appointment of U.S. Attorneys:

> Because of this immense power to strike at citizens, not with mere individual strength, but with all the force of government itself, the post of Federal District Attorney from the very beginning has been safeguarded by presidential appointment, requiring confirmation of the Senate of the United States. You are thus required to win an expression of confidence in your character by both the legislative and the executive branches of the government before assuming the responsibilities of a federal prosecutor.

*Id.* at 2.

Jackson's concerns remain relevant over eighty-five years later. The Senate's confirmation process ensures that presidential nominees possess the competence and character to perform the duties of their office. *See The Federalist* No. 76 (Alexander Hamilton). As *amicus* Gregg Nunziata, on behalf of the Society for the Rule of Law Institute, explained in opposing the confirmation of Ed Martin as U.S. Attorney for the District of Columbia, the Senate, through its Judiciary Committee, "must ensure that any Justice Department nominee would apply the government's vast prosecutorial powers not on behalf of the president, but Justice itself." Letter from Gregg Nunziata, Exec. Dir., Society for the Rule of Law Institute, to Hon. Chuck Grassley, Chairman, and Hon. Dick Durbin, Ranking Member, Sen. Judiciary Comm. 1 (May 1, 2025), https://perma.cc/5L6N-P2QJ. The "[c]onfirmation of individuals ill-suited" to be prosecutors, Nunziata

9

explained, "would pose a dire threat to the Constitution, the rule of law, and the rights and liberties of all Americans." *Id.* Critically, Senate confirmation protects against abuses of prosecutorial power and bald partisanship, and it helps preserve liberty—of both individuals and the Nation as a whole.

**B.    Federal Statutes Governing Interim and Acting Appointments Protect Against Unilateral Appointments.**

*Amici* recognize that U.S. Attorney vacancies combined with the sometimes-lengthy Senate confirmation process can impede local offices from effectively carrying out their functions and, in turn, from achieving an administration's lawful enforcement priorities. Yet Congress has responded to these concerns. Two paths readily permit the administration to temporarily fill U.S. Attorney vacancies while also ensuring that it ultimately seeks Senatorial advice and consent. The administration complied with neither path here.

The first path, 28 U.S.C. § 546, is specific to interim U.S. Attorneys. The second, the FVRA, 5 U.S.C. §§ 3345-3349d, operates across executive agencies to permit the appointment of acting officers, including acting U.S. Attorneys. Both paths allow the Executive Branch to choose and *temporarily* install leaders for U.S. Attorney's offices, *subject to certain statutory conditions*. And both paths retain the Senate's role under the Appointments Clause and the system of checks and balances intrinsic to our Nation. Although this case primarily concerns the FVRA, we discuss both paths here because they plainly show the requirement for Senate

10

confirmation and the extent to which the Attorney General used unlawful maneuvers to keep Sarcone in his role. In addition, Sarcone was first appointed under 28 U.S.C. § 546 before the Attorney General unlawfully invoked the FVRA and other federal statutes to try to extend his tenure. *See* Part II, *infra*.

*Section 546.* Congress assigned both the Attorney General and the courts a role in interim U.S. Attorney appointments while continuing to incentivize Senate confirmation for this consequential office. Under 28 U.S.C. § 546(a), "the Attorney General may appoint a United States attorney for the district in which the office of United States attorney is vacant." The appointee, who cannot be someone for whom "the Senate refused to give advice and consent," *id.* § 546(b), may serve until the earlier of "(1) the qualification of a United States attorney for such district appointed by the President under section 541," *i.e.*, confirmed by the Senate, "or (2) the expiration of 120 days after appointment by the Attorney General," *id.* § 546(c)(1)-(2). When 120 days after appointment expires, "the district court for such district may," in its discretion, "appoint a United States attorney to serve until the vacancy is filled." *Id.* § 546(d). After the initial 120-day appointment, there is no statutory role for the Attorney General or Executive Branch under Section 546.

That Congress shared checks and balances with the federal judiciary under Section 546(d) makes sense, given both the judiciary's interest in the integrity of the criminal justice system and its isolation from political influence. The

11

independent judiciary upholds the fair and impartial administration of justice in the communities in which they sit. Courts thus have an interest in appointing capable and qualified leaders to helm local U.S. Attorney's offices, to earn the respect of their staff, the court, other attorneys, and the public, and to protect the integrity of the justice system. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987) (courts "must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice"). Congress therefore could have confidence that federal district courts would not exercise their discretion to choose unqualified and politically beholden appointees who would abuse their office.

*The FVRA.* Whether used independently or in tandem with 28 U.S.C. § 546, the FVRA offers the Executive Branch—and the President, in particular—added options to temporarily fill a U.S. Attorney vacancy, while maintaining Senatorial advice and consent as the path for permanent appointments. These options are subject to statutory constraints, including time limits, to ensure compliance with the Appointments Clause. *See* 5 U.S.C. §§ 3345-3346; *see also United States v. Giraud*, 160 F.4th 390, 393-95 (3d Cir. 2025). Temporary officeholders, moreover, must possess stipulated in-office experience or must currently be serving in another position as a Senate-confirmed officer. 5 U.S.C. § 3345(a)(1)-(3). These additional

12

checks ensure vacant offices are occupied by qualified persons and reaffirm the importance of Senate confirmation.

More specifically, the FVRA permits three classes of persons to temporarily fill a vacancy for which Senate confirmation is required. By default, the "first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity." *Id.* § 3345(a)(1); *see also id.* § 3345(b)(1) (further limiting the first-assistant pool based on tenure and whether the person has themself been nominated); *Giraud*, 160 F.4th at 394, 397-400 (noting elevation to the acting role is automatic, requires no action from the Executive Branch, citing *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305 (2017), and applies only to the first assistant at the time the vacancy occurs); *Widakuswara v. Lake*, No. 1:25-cv-1015, 2026 WL 638676, at *5-7 (D.D.C. Mar. 7, 2026) (similarly interpreting the language in 5 U.S.C. § 3345(a)(1) to apply to the first assistant at the time of the vacancy). "[T]he President (and only the President)" also has the option under the FVRA to instead appoint a Senate-confirmed officer or senior agency employee as the acting officer. 5 U.S.C. § 3345(a)(2)-(3); *see Giraud*, 160 F.4th at 394, 398. In all circumstances, acting service is time limited: the officer may serve for a 210-day period from the date that the vacancy occurred, or while a first or second nomination for the office is pending in the Senate, with extensions if the

13

nomination is rejected, withdrawn, or returned, although no tolling occurs for further nominations. *See* 5 U.S.C. § 3346; *Giraud*, 160 F.4th at 394.

The FVRA is "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency" for which the Senate's advice and consent is required unless another statute (*e.g.*, 28 U.S.C. § 546) applies or the President makes a recess appointment under the Constitution. *See* 5 U.S.C. § 3347; *see also* U.S. Const. art. II, § 2, cl. 3. General vesting and delegation statutes—that is, statutes other than specific authorization for interim U.S. Attorney appointments under 28 U.S.C. § 546, for example—cannot be used consistent with the FVRA to have another acting official perform all U.S. Attorney duties and functions. *See Giraud*, 160 F.4th at 394-95, 403-05; *see also, e.g.*, *Widakuswara*, 2026 WL 638676, at *7-8 (applying 5 U.S.C. § 3347).

Together Section 546 and the FVRA provide the administration ample discretion and opportunity to temporarily fill a vacant U.S. Attorney office so that the work of the office can continue uninterrupted, while still ensuring that the administration complies with the Appointments Clause to permanently install its preferred occupant.

## II.     The District Court Correctly Held that the Executive Branch Used Unlawful Maneuvers to Install Sarcone as Acting U.S. Attorney.

The district court properly concluded that Attorney General Pamela Bondi violated the FVRA and the Appointments Clause when she relied on the FVRA

14

and other statutes to keep John Sarcone III atop the U.S. Attorney's office after his 120-day term expired under 28 U.S.C. § 546. S.A. 1-2, 9-19. This Court should uphold the decision below, which reaffirms the Senate's essential advice-and-consent role for U.S. Attorneys under the Constitution and governing statutes.

As outlined above, Section 546 permits the Attorney General to install an interim U.S. Attorney for a total of 120 days, after which the district court can act, or the vacant office can be filled consistent with the FVRA pending the Senate's confirmation of a nominee. *See* 28 U.S.C. § 546 (a), (c)(2), (d). Here, upon the Senate-confirmed U.S. Attorney's resignation on February 17, 2025, the then-First Assistant U.S. Attorney (FAUSA) automatically assumed the role of acting U.S. Attorney under the FVRA. S.A. 3. Less than two weeks later, the Attorney General appointed Sarcone as interim U.S. Attorney under 28 U.S.C. § 546(a), effective March 17, 2025. S.A. 3; *see* Press Release, U.S. Dep't of Justice, Attorney General Pamela Bondi Appoints John A. Sarcone III as U.S. Attorney (Mar. 4, 2026), https://perma.cc/ETB6-EYKF. The FAUSA returned to his position. S.A. 4.

Because the President did not nominate a candidate for U.S. Attorney, Sarcone served the full 120 days—or through July 14, 2025—as interim U.S. Attorney. S.A. 3. On July 14, 2025, the day Sarcone's term expired, the district court declined to exercise its discretion under 28 U.S.C. § 546(d) to appoint

15

Sarcone or anyone else as U.S. Attorney. S.A. 3-4. Thus, Sarcone's tenure should have come to an end.

In response, however, the Attorney General attempted several unlawful maneuvers to extend Sarcone's tenure atop the office—this time as acting U.S. Attorney. She reassigned the FAUSA to Deputy U.S. Attorney in order to plug Sarcone into the FAUSA position and have Sarcone automatically elevated to acting U.S. Attorney under the FVRA. S.A. 4-5. To do so, she relied on 28 U.S.C. §§ 510 and 515 to appoint Sarcone as "special attorney," designated him FAUSA, and delegated to him the ability to conduct any kind of legal proceeding that U.S. attorneys are permitted to conduct. S.A. 4-5; *see* Santul Nerkar & Jonah E. Bromwich, *Spurned U.S. Attorney Clings to Job by Being Appointed His Own Assistant*, N.Y. Times (July 16, 2025), https://tinyurl.com/3ae2e9nc. Approximately three weeks later, the grand jury subpoenas were issued. S.A. 5.

Given these facts, the district court correctly concluded that Sarcone was unlawfully appointed at the time the subpoenas were issued. S.A. 9-19. When Sarcone's appointment under Section 546 expired and the district court declined to appoint a U.S. attorney, no statutory mechanism permitted the administration to extend Sarcone's tenure atop the U.S. Attorney's office. Rather, the FVRA is the "exclusive means for temporarily authorizing an acting official to perform the duties of" such vacant position absent Senate confirmation. S.A. 11; *see* 5 U.S.C. §

16

3347(a)(1)-(2). Here, the Attorney General could not install Sarcone as FAUSA, and therefore elevate him to acting U.S. attorney by automatic operation of the FVRA, because Sarcone was not serving in that role at the time the vacancy arose. S.A. 13-17; *see Giraud*, 160 F.4th at 397-401. Nor could the Attorney General rely on general delegation statutes, in contravention of the FVRA, to make Sarcone the acting officer for a role requiring Senate confirmation. S.A. 12, 17-19; *see* 5 U.S.C. § 3345(b); *Giraud*, 160 F.4th 402-06.

Importantly, to interpret the FVRA otherwise would elevate the role of the Executive Branch relative to Congress and the courts in a manner Congress never authorized despite having the constitutional power to place U.S. attorney appointments solely within the Executive Branch. The limits Congress placed on interim and acting U.S. attorney appointments under Section 546 and the FVRA prioritize the Senate's advice and consent by requiring confirmation before the administration can fill a vacant office other than temporarily and subject to statutory constraints. "[T]he United States Attorney provisions plainly indicate that Congress wished to vest the significant prosecutorial power of that Office only in individuals who were acceptable to both the President *and* the Senate, and only for limited periods." *United States v. Naviwala*, No. 2:24-cr-99, 2026 WL 658885, at *37 (D.N.J. Mar. 9, 2026). The district court correctly held that the

17

administration's attempt to keep Sarcone in office by melding the FVRA and general delegation statutes violated federal law.

**III. The Administration's End-Run Around the Constitution and Governing Statutes Undermines the Rule of Law by Emboldening Politicized Investigations and Prosecutions and Chilling Opposition.**

Significantly, the district court is not alone in rejecting an attempt by the administration to circumvent federal law and install its preferred prosecutor atop a U.S. Attorney's office indefinitely without obtaining Senate confirmation. Every court that has examined recent challenges to such appointments—and there have been challenges to at least five other appointees and one "triumvirate"—has held the appointment to be invalid because of similar unlawful maneuvers by the administration. *See, e.g.*, *Giraud*, 160 F.4th at 406-07 (Alina Habba); *United States v. Garcia*, No. 2:25-cr-00227, 2025 WL 2784640, at *14, *18 (D. Nev. Sept. 30, 2025) (Sigal Chattah), *appeal filed* No. 25-6229 (9th Cir., argued Feb. 12, 2026); *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1091, 1105 (C.D. Cal. 2025) (Bilal Essayli); *United States v. James*, 810 F. Supp. 3d 752, 762-63 (E.D. Va. 2025) (Lindsey Halligan), *appeal filed* No. 25-4673 (4th Cir. Dec. 22, 2025); *United States v. Comey*, 810 F. Supp. 3d 768, 780-81 (E.D. Va. 2025) (Lindsey Halligan), *appeal filed* No. 25-4674 (4th Cir. Dec. 22, 2025); *United States v. Ramirez-Martinez*, No. 1:22-cr-01721, 2026 WL 113431, at *26 (D.N.M. Jan. 14,

2026) (Ryan Ellison); *Naviwala*, 2026 WL 658885, at \*2-4, \*9, \*23-29, \*31, \*34-46, \*52 ("triumvirate").[2]

The consequences of the administration's attempted end-run around federal law are clear. Its actions threaten the legitimacy of prosecutions, the credibility of U.S. Attorney's offices, and the fair and impartial administration of justice. The case on appeal demonstrates as much. It shows a Justice Department wielding its

---

[2] Both Alina Habba and Lindsey Halligan resigned from their respective U.S. Attorney's offices. *See* Steve Thompson, Salvador Rizzo & Jeremy Roebuck, *Lindsey Halligan out as U.S. attorney following pressure from judges*, Wash. Post (Jan. 20, 2026), https://wapo.st/4b6k2lQ. Sigal Chattah remains in charge of the District of Nevada as FAUSA because the district court stayed its decision pending the Ninth Circuit's review. *See* Order, *Garcia*, No. 2:25-cr-00227 (D. Nev. Oct. 23, 2025), ECF No. 52; U.S. Att'y's Off., D. Nev., *Meet the First Assistant U.S. Attorney* (last visited Apr. 3, 2026), https://perma.cc/A5WX-HMQU. The President has since nominated George Kelesis for U.S. Attorney for the District of Nevada. *See* Dana Gentry, *Trump appoints Kelesis as U.S. attorney as Chattah fights disqualification before Ninth Circuit*, Nevada Current (Feb. 12, 2026), https://tinyurl.com/ye27chem. Bill Essayli and Ryan Ellison remain in charge of their respective offices as FAUSAs. *See* U.S. Att'y's Off., C.D. Cal., *Staff Profile: First Assistant U.S. Attorney Bilal A. Essayli* (last visited Apr. 3, 2026), https://perma.cc/Y7CQ-XC6U; U.S. Att'y's Off., D.N.M., *Staff Profile: Meet the U.S. Attorney* (last visited Apr. 3, 2026), https://perma.cc/55J4-CHJB; *Ramirez*, 807 F. Supp. 3d at 1112-15 (holding Essayli unlawfully assumed the role of Acting U.S. Attorney but could continue as FAUSA); *Ramirez-Martinez*, 2026 WL 113431, at \*26 (holding Ellison could not claim to be Acting U.S. Attorney, Interim U.S. Attorney, or U.S. Attorney but could serve as FAUSA pursuant to an order by the Attorney General). Following the decision deeming the "triumvirate" heading the U.S. Attorney's Office for the District of New Jersey to be unlawful, the chief judge appointed a U.S. Attorney under 28 U.S.C. § 546(d) on behalf of the district court; the Trump administration seemingly intends to honor the appointment. *See* Joey Fox & David Wildstein, *How federal judges and the White House came together to pick a new U.S. Attorney*, N.J. Globe (Mar. 26, 2026), https://tinyurl.com/mstxwm88.

prosecutorial power to investigate a perceived political adversary to retaliate for prior civil litigation against the President. And it shows a Justice Department that prioritizes settling scores above competence and character and the fair administration of justice. *See* Peter Baker, *Trump's Top Aide Acknowledges 'Score Settling' Behind Prosecutions*, N.Y. Times (Dec. 16, 2025), https://tinyurl.com/3uz5xc9h (White House chief of staff Susie Wiles acknowledging that the President has targeted New York Attorney General Letitia James as "retribution" for her civil case against him).

Indeed, only three weeks after the Attorney General unlawfully extended his tenure, Sarcone directed the issuance of the two grand jury subpoenas to the New York Office of the Attorney General. S.A. 5. The first subpoena concerns the civil case—*New York v. Trump*, Index No. 452564/2022 (Sup. Ct. N.Y. Cnty.)—that the State brought against President Trump and his associates alleging financial fraud. S.A. 5. The second subpoena relates to a separate civil case—*New York v. National Rifle Ass'n*, Index No. 451625/2020 (Sup. Ct. N.Y. Cnty.)—that the State brought against the NRA and two of its senior executives alleging violations of New York charities laws. S.A. 5. The news media reported that the subpoenas related to a federal criminal investigation that Sarcone had opened into supposed civil-rights violations that the State allegedly may have committed against Trump or others by bringing the civil cases. S.A. 6; *see, e.g.*, Kara Scannell, Casey Gannon, & Jeremy

20

Herb, *Justice Department opens investigation into New York attorney general who won civil fraud case against Trump*, CNN Politics (Aug. 8, 2025), https://tinyurl.com/4fj3rh4h.

The administration's installation of Sarcone and others through end-runs around the Constitution and federal law shows that it "is putting people into these roles not for their expertise in law or their service to the rule of law, but for their loyalty to the President and their willingness to put his personal interests above the law." Society for the Rule of Law, *Gregg Nunziata on Trump's DOJ Overreach with Chris Hayes* (Sept. 24, 2025), https://tinyurl.com/3s85p8ku; *see also* Cameron Joseph & Henry Gass, *Trump lands his former attorneys in top positions as he leans on the judiciary*, Christian Science Monitor (July 31, 2025), https://perma.cc/VHK5-FXTK. But "[t]he resources of the federal government, particularly the immense prosecutorial powers of the Justice Department, should not be directed toward persecuting, unlawfully, the personal enemies or critics of the President who happens to sit in the White House today." Society for the Rule of Law, *All in with Chris Hayes*, at 3:05 (Sep. 24, 2025), https://tinyurl.com/3s85p8ku. Senate confirmation for U.S. Attorneys is integral to upholding the rule of law and the fair and impartial administration of justice. *See* H.R. Rep. No. 110-58, at 3-5 (2007) (citing concerns about political interference

21

with U.S. Attorneys' prosecutorial independence and emphasizing the importance of Senate advice and consent as a check on the President's appointment power).

Moreover, political investigations and prosecutions send a message that failure to capitulate to the president's whims exposes even very powerful people and offices to trumped-up criminal investigation. Even where the district court may quash a subpoena, as here, politicized investigations and prosecutions seek to discredit political opponents, public officials, and government institutions; they impose legal costs and seek to denigrate political adversaries (real or imagined) while chilling the speech of others. Politicized prosecutions harass their targets by consuming their time and resources, tarnishing their reputations, and impeding their future opposition efforts. *See* Kim Lane Scheppele, *Restoring Democracy Through International Law*, 39 Am. U. Int'l L. Rev. 587, 617-18 (2024). The result is a chilling effect that reaches beyond the immediate target and is designed to undermine officials committed to upholding the rule of law and impartial justice.

An increasingly politicized, weaponized, and corrupted justice system threatens our fundamental values: impartial criminal justice, freedom of speech, due process, equal protection of the laws, the right to petition the government, and democracy itself. *See* Society for the Rule of Law, *Statement on Jerome Powell Investigation* (Jan. 13, 2026), https://perma.cc/GY2U-5CUF; *see In re Grand Jury Subpoenas Bd. of Gov.'s of the Fed. Rsrv. Sys. v. United States*, No. 1:26-mc-12,

2026 WL 710202, at *13 (D.D.C. Mar. 13, 2026) (quashing subpoenas upon finding they were issued for an improper purpose, *i.e.*, pressuring Jerome Powell "into voting for lower interest rates or resigning"). As Attorney General Robert Jackson explained over eighty-five years ago, "the greatest danger of abuse of prosecuting power" is when "law enforcement becomes personal, and the real crime becomes that of being unpopular with the predominant or governing group, being attached to the wrong political views, or being personally obnoxious to or in the way of the prosecutor himself." Address, *The Federal Prosecutor* at 5.

The threat of vindictive, politicized investigations and prosecutions reaffirms the importance of upholding our constitutional system of robust checks and balances to ensure that qualified individuals committed to the fair and impartial administration of justice inhabit the top role in each U.S. Attorney's office. The Justice Department "must be recognized by all citizens as a neutral zone, in which neither favor nor pressure nor politics is permitted to influence the administration of the law." U.S. Att'y Gen. Griffin B. Bell, Address Before U.S. Dep't of Justice Lawyers 13 (Sept. 6, 1978), https://perma.cc/XWM7-TPCR.

## CONCLUSION

This Court should affirm the decision below holding that the Attorney General's appointment of John Sarcone III violates the FVRA and the statutes

23

governing U.S. Attorney appointments. The administration's actions cannot stand under the Constitution's separation of powers.

Respectfully submitted,

Christine P. Sun
STATES UNITED DEMOCRACY CENTER
95 Third Street, 2nd Floor
San Francisco, CA 94103
Tel.: (202) 999-9305

/s/ Erin H. Flynn
Erin H. Flynn
*Counsel of Record*
Maithreyi Ratakonda
STATES UNITED DEMOCRACY CENTER
45 Main Street, Suite 320
Brooklyn, NY 11201
Tel.: (202) 999-9305

*Attorneys for* Amici Curiae *Society for the Rule of Law, Its Executive Director Gregg Nunziata, and Charter Members Donald Ayer, Stuart Gerson, Alan Raul, and Stanley Twardy, Jr.*

24

# CERTIFICATE OF COMPLIANCE

This brief contains 5509 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with Federal Rule of Appellate Procedure 29(a)(4) and (5), and further complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it was prepared in Times New Roman 14-point font using Microsoft Word for Microsoft 365.

/s/ Erin H. Flynn
Erin H. Flynn
*Attorney for* Amici Curiae
*Society for the Rule of Law,*
*Its Executive Director Gregg*
*Nunziata, and Charter Members*
*Donald Ayer, Stuart Gerson, Alan*
*Raul, and Stanley Twardy, Jr.*

Dated: April 6, 2026

**CERTIFICATE OF SERVICE**

I, Erin H. Flynn, hereby certify that on April 6, 2026, I electronically filed the foregoing Brief of Society for the Rule of Law, Its Executive Director Gregg Nunziata, and Charter Members Donald Ayer, Stuart Gerson, Alan Raul, and Stanley Twardy, Jr. as *Amici Curiae* in Support of Petitioner-Appellee and Urging Affirmance with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. A true and correct copy of this brief has been served via CM/ECF on all counsel of record.

*/s/ Erin H. Flynn*
Erin H. Flynn
*Attorney for* Amici Curiae
*Society for the Rule of Law,*
*Its Executive Director Gregg*
*Nunziata, and Charter Members*
*Donald Ayer, Stuart Gerson, Alan*
*Raul, and Stanley Twardy Jr.*