# No. 26-156

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

IN RE GRAND JURY SUBPOENAS TO THE OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL, *Petitioner-Appellee*,

V.

UNITED STATES OF AMERICA, *Respondent-Appellant*,

———————————

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN
DISTRICT OF NEW YORK

———————————

**BRIEF FOR STATES OF CALIFORNIA, ARIZONA, COLORADO,
CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, MAINE,
MARYLAND, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY,
NEW MEXICO, OREGON, RHODE ISLAND, VERMONT,
WASHINGTON; COMMONWEALTHS OF MASSACHUSETTS AND
VIRGINIA; AND DISTRICT OF COLUMBIA, AS AMICI CURIAE IN
SUPPORT OF APPELLEE AND AFFIRMANCE**

———————————

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
PAUL E. STEIN
R. MATTHEW WISE
  *Supervising Deputy Attorneys
  General*
IRAM HASAN
KRISTI A. HUGHES*
SUSAN DUNCAN LEE
  *Deputy Attorneys General*

\*Pro hac vice admission pending

STATE OF CALIFORNIA
DEPARTMENT OF JUSTICE
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 510-3793
Iram.Hasan@doj.ca.gov
  *Counsel of record for Amici Curiae
  California, Arizona, Connecticut,
  Delaware, Hawai'i, Illinois, Maine,
  Maryland, Massachusetts, Michigan,
  Minnesota, Nevada, New Jersey,
  New Mexico, Oregon, Rhode Island,
  Vermont, Virginia, Washington, and
  District of Columbia*

(*Additional counsel listed on next page and signature page.*)

April 6, 2026

Shannon Stevenson
Solicitor General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000
E-Mail: Shannon.Stevenson@coag.gov
   *Counsel of record for Amicus Curiae*
   *State of Colorado*

# TABLE OF CONTENTS

**Page**

Interest of Amici Curiae.................................................................. 1

Argument..................................................................................... 2

    I.     The Advice and Consent Power Serves the Important
           Purpose of Promoting Public Accountability........................... 2

         A.    In Adopting the Appointments Clause, the Framers
               Intended to Curb Abuses of Power and Promote a
               Well-Functioning Government ...................................... 2

         B.    States Are Necessary Participants in the Advice and
               Consent Process, as Illustrated by the Procedures for
               Carrying it Out ............................................................ 3

    II.    Circumventing the Advice and Consent Process for United
           States Attorneys Undermines the Framers' Intent and State
           Sovereignty................................................................... 6

         A.    Exceeding the Strict Limits of the Temporary
               Appointments Process Thwarts the Framers' Intent
               in Adopting the Appointments Clause........................... 6

         B.    Allowing an Illegitimately Appointed Federal
               Official to Wield the Grand Jury's Vast Power
               Against a State Upends the Constitution's Dual
               Sovereign Structure....................................................... 11

Conclusion ..................................................................... 15

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Berger v. United States*
295 U.S. 78 (1935)..................................................................... 1, 10

*Bordenkircher v. Hayes*
434 U.S. 357 (1978)......................................................................... 9

*Branzburg v. Hayes*
408 U.S. 665 (1972)....................................................................... 11

*Buckley v. Valeo*
424 U.S. 1 (1975).......................................................................... 1, 2

*Cameron v. EMW Women's Surgical Ctr.*
595 U.S. 267 (2022)....................................................................... 12

*Carr v. Saul*
593 U.S. 83 (2021)........................................................................... 7

*Cirko v. Comm'r of Soc. Sec.*
948 F.3d 148 (3d Cir. 2020) ............................................................ 8

*Collins v. Yellen*
594 U.S. 220 (2021)......................................................................... 7

*Edmond v. United States*
520 U.S. 651 (1997).................................................................2, 3, 10

*Freytag v. Comm'r*
501 U.S. 868 (1991)......................................................................2, 3

*Gregory v. Ashcroft*
501 U.S. 452 (1991)....................................................................... 10

*In re Grand Jury Subpoena for N.Y. State Income Tax Recs.*
468 F. Supp. 575 (N.D.N.Y. 1979)................................................... 12

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Grand Jury Subpoena for THCF Med. Clinic Records*
  504 F. Supp. 2d 1085 (E.D. Wash. 2007)......................................................12

*In re Special Apr. 1977 Grand Jury*
  581 F.2d 589 (7th Cir. 1978) .........................................................................12

*In the Matter of People v. Trump Org., Inc.*
  169 N.Y.S.3d 612 (N.Y. Sup. Ct. 2022)........................................................13

*Lucia v. SEC*
  585 U.S. 237 (2018)..........................................................................................8

*McCulloch v. Maryland*
  17 U.S. 316 (1819).........................................................................................10

*NLRB v. SW Gen., Inc.*
  580 U.S. 288 (2017)..........................................................................................6

*People v. Nat'l Rifle Ass'n of Am., Inc.*
  171 N.Y.S.3d 782 (N.Y. Sup. Ct. 2022)........................................................13

*People v. Trump Org., Inc.*
  2022 WL 489625 (N.Y. Sup. Ct. Feb. 17, 2022)...........................................13

*Printz v. United States*
  521 U.S. 898 (1997)..............................................................................12, 13, 14

*Ryder v. United States*
  515 U.S. 177 (1995).......................................................................................7, 8

*Tafflin v. Levitt*
  493 U.S. 455 (1990)........................................................................................12

*United States v. Comey*
  No. 1:25-CR-00272-MSN, 2025 WL 3266932 (E.D. Va. Nov.
  24, 2025) ...........................................................................................................8

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Eaton*
169 U.S. 331 (1898)..................................................................................7

*United States v. Garcia*
No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640 (D. Nev.
Sept. 30, 2025) .........................................................................................8

*United States v. Giraud*
160 F.4th 390 (3d Cir. 2025) ...................................................................8

*United States v. James*
No. 2:25-CR-00122-JKW, 2025 WL 3266931 (E.D. Va. Nov.
24, 2025) ...................................................................................................9

*United States v. R. Enters., Inc.*
498 U.S. 292 (1991).................................................................................11

*United States v. Ramirez*
897 F. Supp. 3d 1086 (C.D. Cal. 2025) ...................................................8

*United States v. Trump*
740 F. Supp. 3d 1245 (S.D. Fla. 2024) ....................................................8

*Wesberry v. Sanders*
376 U.S. 1 (1964).....................................................................................4

**STATUTES**

5 U.S.C. § 3345 *et seq*...............................................................................4

28 U.S.C. § 541(a) .......................................................................................4

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II, § 2 .................................................................................3

U.S. Const. art. II, § 2, cl. 2 ...............................................................*passim*

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

OTHER AUTHORITIES

Barry J. McMillion, *The Blue Slip Process for U.S. Circuit and District Court Nominations (1917–Present)*, CONG. RSCH. SERV., R44975, Nov. 20, 2025, https://www.congress.gov/crs_external_products/R/PDF/R44975/R44975.11.pdf ............................................................... 5

Lucas T. Vebber, *Unconstitutional Federalism: A Call to Reinvigorate the Appointments Clause*, 21 GEO. J. L. & PUB. POL'Y 337, 339 (2023) ................................................................ 6

Rachel E. Barkow, *Institutional Design and the Policing of Prosecutors: Lessons from Administrative Law*, 61 STAN. L. REV. 869, 870 (2009) ........................................................... 9

Richard J. Fallon, Jr., *Legitimacy of the Constitution*, 118 HARV. L. REV. 1787, 1794-98 (2005) ............................................ 10

Stephanos Bibas, *Prosecutorial Regulation Versus Prosecutorial Accountability*, 157 U. PENN. L. REV. 959, 960 (2009) .......................... 9, 10

THE FEDERALIST No. 51 (James Madison) ....................................................... 2

THE FEDERALIST No. 76 (Alexander Hamilton) ............................................. 2, 4

## INTEREST OF AMICI CURIAE

Amici are the States of California, Arizona, Colorado, Connecticut, Delaware, Hawaiʻi, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, and Washington; the Commonwealths of Massachusetts and Virginia; and the District of Columbia. Amici have an urgent interest in ensuring that the Advice and Consent process, as set forth in the Appointments Clause and enabling statutes, is scrupulously followed for all applicable appointments, including to the office of United States Attorney. "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all[.]" *Berger v. United States*, 295 U.S. 78, 88 (1935). The appointee to that office "exercise[s] significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126 (1975). Accordingly, his interest should not be that he "shall win a case, but that justice shall be done." *Berger*, 295 U.S. at 88.

The States, their officers and employees, and their residents interact with United States Attorneys and their assistants in many ways—including as parties to investigations or litigation, and as partners in operations such as task forces or training—and the decisions of United States Attorneys impact the wellbeing of the States where they work. The States have a serious interest in the legitimacy of the

process by which United States Attorneys are appointed to represent the United States in cases involving the federal government within their respective districts. The States and their People deserve a process that gives the States a voice, through the Senate, to promote the appointment of United States Attorneys who will act in good faith and according to the law.

## ARGUMENT

### I. THE ADVICE AND CONSENT POWER SERVES THE IMPORTANT PURPOSE OF PROMOTING PUBLIC ACCOUNTABILITY

#### A. In Adopting the Appointments Clause, the Framers Intended to Curb Abuses of Power and Promote a Well-Functioning Government

The Framers recognized that the formal process created by way of the Appointments Clause was necessary to "promote a judicious choice of men for filling the offices of the Union," THE FEDERALIST No. 76 (Alexander Hamilton), and that "[i]n framing a government which is to be administered by men over men," the government must be "oblige[d] . . . to control itself," THE FEDERALIST No. 51 (James Madison). "The principle of separation of powers is embedded in the Appointments Clause." *Freytag v. Comm'r*, 501 U.S. 868, 882 (1991).

The Appointments Clause "is more than a matter of 'etiquette or protocol'; it is among the significant structural safeguards of the constitutional scheme." *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting *Buckley v. Valeo*, 424 U.S. at 125). It is rooted in the separation of powers fundamental to our system of

2

government, and in the limitations built into our Constitution's structure. *Freytag*, 501 U.S. at 878. The Appointments Clause prevents one branch of government from "encroachment upon" others. *Edmond*, 520 U.S. at 559. The Framers anticipated that "a collective body" would be "less vulnerable to the interest-group pressure and personal favoritism than would" the President, and thereby "assure a higher quality of appointments[.]" *Id.* By making the Senate a necessary part of the appointments process, the Framers sought to "curb Executive abuses of the appointment power" and "'promote a judicious choice of persons for filling the offices of the union[.]'" *Id.* (citations and brackets omitted). "[J]oint participation of the President and the Senate" is also "designed to ensure public accountability for the making of a bad appointment and the rejection of a good one." *Id.* at 660. In short, this process is meant to promote a government the citizens of this Nation can trust.

### B.   States Are Necessary Participants in the Advice and Consent Process, as Illustrated by the Procedures for Carrying it Out

Article II, section 2 of the United States Constitution gives the President power "by and with the Advice and Consent of the Senate" to appoint certain officers of the United States. This assignment of power to the Senate, set as it is within a section vesting appointment power in the President, is an unmistakable distribution of power between coordinate branches of government. For Amici, it is especially meaningful that the Advice and Consent power is given to the Senate in

3

particular, because the Senate was structurally conceived to represent States qua States. *See Wesberry v. Sanders,* 376 U.S. 1, 9-14 (1964) (describing "Great Compromise" among Framers to create one chamber representative of the People, and the other chamber representative of the States).

The Advice and Consent provision guarantees the States' participation in the appointments process through their Senate representatives. *See* Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. § 3345 *et seq.*; *see also* 28 U.S.C. § 541(a) (United States Attorney appointments are subject to Senate confirmation).

In representing the States in this process, the Senate is "an excellent check upon a spirit of favoritism in the President," "tend[s] greatly to prevent the appointment of unfit characters[,]" and is "an efficacious source of stability in the administration." THE FEDERALIST No. 76 (Alexander Hamilton). States are included in the process of carrying out this crucial structural safeguard precisely because it matters to them who is appointed to make decisions that will impact their citizens. And for appointments to the offices such as that of the United States Attorney, which exists in each district in each State, State representatives are ideally positioned to identify appropriate candidates for openings within their State—they know the issues impacting the citizens of the district who the appointee would serve.

The Senate's "blue slip process," in particular, is a practical illustration of the States' structural role in the appointment process. The "blue slip process" refers to a practice developed by the United States Senate Judiciary Committee "for use in confirmations of federal judges and other positions," including United States Attorneys and United States Marshals. Barry J. McMillion, *The Blue Slip Process for U.S. Circuit and District Court Nominations (1917–Present)*, CONG. RSCH. SERV., R44975, Nov. 20, 2025, at 1, https://www.congress.gov/crs_external_products/R/PDF/R44975/R44975.11.pdf. The policy has changed over time, but the general practice is that the Senate Judiciary Committee sends a blue-colored form to the Senators representing the home State of the nominee. If a home-state Senator has no objection, he or she will return the blue slip with a positive response. If the Senator objects, he or she may return the blue slip with a negative response or not return it at all, which in some circumstances can preclude the nomination from proceeding. *Id.* at 1. The practice affords States the ability to advise on who will be appointed to represent the United States in their home districts. *See id.* at 2 (home State's interest in who is appointed to district); *see also id.* at 3-4 & n.18 (Senators' consultations with President as part of Advice function).

In short, the Advice and Consent provision of the Appointments Clause is no mere procedural requirement, but a substantial guardrail that balances several

5

interests—including the expansive prosecutorial authority exercised by United States Attorneys, as well as the States' well-established interests in democratic governance and the rule of law. *See* Lucas T. Vebber, *Unconstitutional Federalism: A Call to Reinvigorate the Appointments Clause*, 21 GEO. J. L. & PUB. POL'Y 337, 339 (2023). Amici therefore have a strong interest in ensuring that the Appointments Clause and its protections are not circumvented.

## II. CIRCUMVENTING THE ADVICE AND CONSENT PROCESS FOR UNITED STATES ATTORNEYS UNDERMINES THE FRAMERS' INTENT AND STATE SOVEREIGNTY

### A. Exceeding the Strict Limits of the Temporary Appointments Process Thwarts the Framers' Intent in Adopting the Appointments Clause

Although Amici recognize the need for stopgaps in the Appointments process to ensure that "the responsibilities of an office requiring Presidential appointment and Senate confirmation" do not "go unperformed if a vacancy arises," *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 292 (2017), there must be limits to the Executive's use of those temporary appointments. There is no dispute that temporary appointments may be made outside of the Advice and Consent process, *id*. at 292-93, but such appointments are limited exceptions rather than parallel processes to the Appointments Clause, *id*. at 293-94. The hallmark of a stopgap is that it is an expedient, to be employed "for a limited time, and under special and temporary conditions," so that a temporary appointee is not "transformed into the superior and

6

permanent official" outside of the Advice and Consent process. *United States v. Eaton*, 169 U.S. 331, 343 (1898).

The concerns that motivated the Framers to adopt the Appointments Clause still exist today. Accordingly, to police appointments that fall outside the bounds of permissible stopgaps, interested parties can challenge questionable appointments. Indeed, such challenges are encouraged. *See Ryder v. United States*, 515 U.S. 177, 183 (1995). And the Supreme Court has counseled against formulating a rule that "would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." *Id*. It has, for example, declined to require exhaustion of remedies as a prerequisite to an Appointments Clause challenge. *See Carr v. Saul*, 593 U.S. 83, 92-94 (2021). It has also held that "one who makes a timely challenge to the constitutional validity of the appointment of an officer . . . is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred." *Ryder*, 515 U.S. at 182-83. That relief includes invalidating actions as *ultra vires* if a person exercised "power that the actor did not lawfully possess." *Collins v. Yellen*, 594 U.S. 220, 258 (2021); *see also Ryder*, 515 U.S. at 185 (invalidating actions taken pursuant to "defective title").

Courts have ordered such highly consequential remedies time and again. The Supreme Court has held that "the appropriate remedy" for a decision made by an

7

adjudicator whose appointment did not comply with the law may be a "new hearing before a properly appointed official." *See Lucia v. SEC*, 585 U.S. 237, 251 (2018) (internal citation and quotation marks omitted); *see also Ryder*, 515 U.S. at 178 (holding the same with respect to a panel of adjudicators); *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 159-60 (3d Cir. 2020) (holding the same with respect to an administrative law judge). In the context of United States Attorneys' offices, appointees who lacked proper authority to undertake the functions of the United States Attorney have been disqualified from prosecuting, or supervising the prosecution of, criminal cases. *See United States v. Giraud*, 160 F.4th 390, 403-04, 407 (3d Cir. 2025); *United States v. Garcia*, No. 2:25-CR-00227-DGC-BNW, 2025 WL 2784640, at *18 (D. Nev. Sept. 30, 2025), *appeal docketed*, No. 25-6465 (9th Cir. Oct. 14, 2025); *United States v. Ramirez*, 897 F. Supp. 3d 1086, 1112-15 (C.D. Cal. 2025).

Courts have even dismissed grand jury indictments in furtherance of enforcing the Appointments Clause. *See United States v. Trump*, 740 F. Supp. 3d 1245, 1302-03 (S.D. Fla. 2024) (dismissing indictment charging President Trump with over forty counts of national-security-related charges because Special Counsel who signed indictment was appointed in violation of the Appointments Clause); *see also United States v. Comey*, No. 1:25-CR-00272-MSN, 2025 WL 3266932, *10-11, 15, (E.D. Va. Nov. 24, 2025), *appeal docketed*, No. 25-4674 (4th Cir. Dec.

22, 2025) (dismissing indictment against former FBI Director James Comey because the interim United States Attorney who brought the indictments was unlawfully appointed); *United States v. James*, No. 2:25-CR-00122-JKW, 2025 WL 3266931, *9-10, 13 (E.D. Va. Nov. 24, 2025), *appeal docketed*, No. 25-4673 (4th Cir. Dec. 22, 2025) (dismissing indictment against New York Attorney General Letitia James for the same reason).  Such substantial remedies are necessary to prevent circumvention of the Advice and Consent process, as well as the careful statutory mechanisms for making temporary appointments outside of the Advice and Consent process.

Thorough vetting of United States Attorney appointments is imperative given the enormous discretionary power that federal prosecutors wield:  "No government official in America has as much unreviewable power and discretion as the prosecutor."  Stephanos Bibas, *Prosecutorial Regulation Versus Prosecutorial Accountability*, 157 U. PENN. L. REV. 959, 960 (2009); *see also* Rachel E. Barkow, *Institutional Design and the Policing of Prosecutors: Lessons from Administrative Law*, 61 STAN. L. REV. 869, 870 (2009) ("It is hard to overstate the power of federal prosecutors.")  Indeed, the Supreme Court has recognized that "[t]here is no doubt that the breadth of discretion that our country's legal system vests in prosecuting attorneys carries with it the potential for both individual and institutional abuse." *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978); *see*

9

*Berger*, 295 U.S. at 88. The breadth of a United States Attorney's discretion— and the power that may be wielded with it—demand thorough consideration and a clear record of political accountability. *See generally*, Bibas, 157 U. PENN. L. REV. at 981-91 (informal constraints like public scrutiny are important checks on prosecutors). "Procedural regularity in the appointment of officials exercising significant discretion promotes public acceptance of their authority as lawful rather than arbitrary." Richard J. Fallon, Jr., *Legitimacy of the Constitution*, 118 HARV. L. REV. 1787, 1794-98 (2005); *see Edmond*, 520 U.S. at 663 (Appointments Clause promotes political accountability by ensuring that appointed officers are traceable to elected officials).

The designed balance between federal and state sovereigns only works as a check on power when each sovereign acts within its constitutionally designated sphere of power. *See Gregory v. Ashcroft*, 501 U.S. 452, 459 (1991) (achieving federalism's promise of "double security" requires "a proper balance between the States and the Federal Government"). The balance is upset when an invalidly appointed federal officer attempts to coerce a sovereign State by abusing the authority of the office he purports to possess. *See McCulloch v. Maryland*, 17 U.S. 316, 400-01 (1819) (federal-state conflict "must be decided peacefully" or it will become a source of "hostility of a still more serious nature"). In such

circumstances, the federalism structure that protects not only our democracy but individual citizens is undermined, opening the door for future instability.

**B.     Allowing an Illegitimately Appointed Federal Official to Wield the Grand Jury's Vast Power Against a State Upends the Constitution's Dual Sovereign Structure**

This case well illustrates the importance of enforcing the limits of temporary appointments.  Indeed, ensuring that only lawfully appointed officials represent the federal government is crucial in cases like this one, where an invalidly appointed United States Attorney with no legitimate authority has misused the power of a federal grand jury against a sovereign State.

Grand juries possess immense investigative powers.  These powers are "necessarily broad."  *See Branzburg v. Hayes*, 408 U.S. 665, 689 (1972); *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991) (grand juries are empowered to "paint[] with a broad brush").  Because a grand jury may "inquire into all information that may possibly bear on its investigation" and can "investigate merely on suspicion that the law is being violated," *see id.* at 297 (citations omitted), its investigative subpoenas may easily be misused—as when an investigation is wrongly initiated "out of malice or an intent to harass." *See id.* at 299.  Staying alert to the potential for abuse is crucial where, as here, the subpoena's target is the chief legal officer of a sovereign State.  Courts have cautioned that federal grand juries should not be permitted to "run roughshod" over

11

sovereign state interests.  *See In re Grand Jury Subpoena for N.Y. State Income Tax Recs.*, 468 F. Supp. 575, 578 n.2 (N.D.N.Y. 1979).  While sovereignty obviously does not prevent a State from "provid[ing] evidence to the grand jury," *In re Special Apr. 1977 Grand Jury*, 581 F.2d 589, 592 (7th Cir. 1978), courts have been careful to scrutinize the necessity of compliance when the target of a grand jury subpoena is a State, and when compelling the production of State records could impact significant state interests.  *See, e.g.*, *In re Grand Jury Subpoena for THCF Med. Clinic Records*, 504 F. Supp. 2d 1085, 1091 (E.D. Wash. 2007).

The Framers of our Constitution believed that dual sovereignty was essential to the stability of our democracy; dividing power between federal and state sovereigns, "each protected from incursion by the other," provided a "structural protection[] of liberty" and "reduce[d] the risk of tyranny and abuse from either front."  *See Printz v. United States*, 521 U.S. 898, 920-21 (1997); *see generally id.* at 918-19; *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990) ("the States possess sovereignty concurrent with that of the Federal Government").

"Paramount among the States' retained sovereign powers is the power to enact and enforce any laws that do not conflict with federal law."  *See Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 277 (2022) (States "clearly [have] a legitimate interest in the continued enforceability of [their] own statutes").  With this independent power, States may investigate violations of their laws and initiate

12

proceedings (as New York has properly done here) to enforce their financial laws and protect their citizens from fraud. *In the Matter of People v. Trump Org., Inc.*, 169 N.Y.S.3d 612, 627 (N.Y. Sup. Ct. 2022) (finding New York's investigation into Trump organization was "lawfully initiated at its outset and well founded"); *People v. Nat'l Rifle Ass'n of Am., Inc.*, 171 N.Y.S.3d 782, 786 (N.Y. Sup. Ct. 2022) (holding that New York's suit against National Rifle Association raised "serious claims based on detailed allegations of wrongdoing at the highest levels of a not-for-profit organization as to which the Attorney General has legitimate oversight responsibility"). Indeed, one judge reviewing New York's initial civil investigation into the Trump Organization opined that it would have been a "blatant dereliction of duty" for the New York Attorney General's Office *not* to conduct the investigation as it did. *People v. Trump Org., Inc.*, 2022 WL 489625, *5 (N.Y. Sup. Ct. Feb. 17, 2022).

Allowing the federal government to use the grand jury's immense investigative power to probe New York's lawful investigations into President Trump and the National Rifle Association does more than just trample on New York's "inviolable sovereignty." *See Printz*, 521 U.S. at 920-21. It also egregiously threatens our dual sovereign system where, as here, the federal officer is not exercising legitimate federal authority because his appointment violated applicable statutes. In these circumstances, the constitutional harm is amplified

13

because a federal officer is unlawfully using the federal government's power and authority against a sovereign State that was lawfully furthering its own legitimate interests. Misusing the federal government's power this way fractures the balanced, dual sovereign structure that acts as a check on each sovereign's power and reduces "the risk of tyranny and abuse from either front." *See id*. at 921 (federalism is a "structural protection[] of liberty").

It is no coincidence that the unreasonable and oppressive subpoenas being litigated in the underlying case were issued under the auspices of a person whose appointment did not follow the regular process. Irregularity tends to produce more irregularity—until it is checked. To respect the balance between federal and state sovereigns that our Framers intended, Amici urge this Court to uphold the district court's ruling.

## CONCLUSION

The district court's order should be affirmed.

///

///

///

///

///

///

14

Dated:  April 6, 2026

Respectfully submitted,

*/s/ Iram Hasan*

ROB BONTA
  *Attorney General of California*
THOMAS S. PATTERSON
  *Senior Assistant Attorney General*
PAUL E. STEIN
R. MATTHEW WISE
  *Supervising Deputy Attorneys General*
IRAM HASAN
KRISTI A. HUGHES*
SUSAN DUNCAN LEE
  *Deputy Attorneys General*

*Counsel of record for Amicus Curiae States of California, Arizona, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, and Washington; Commonwealths of Massachusetts and Virginia; and District of Columbia*

**Pro hac vice* admission pending

*/s/ Shannon Stevenson*

Shannon Stevenson
Solicitor General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: 720-508-6000
E-Mail: Shannon.Stevenson@coag.gov

*Counsel of record for Amicus Curiae State of Colorado*

15

## LIST OF ATTORNEYS GENERAL FOR THE AMICUS CURIAE JURISDICTIONS[1]

KRISTIN K. MAYES
*Attorney General*
*State of Arizona*

ROB BONTA
*Attorney General*
*State of California*

PHILIP J. WEISER
*Attorney General*
*State of Colorado*

WILLIAM TONG
*Attorney General*
*State of Connecticut*

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*

ANNE E. LOPEZ
*Attorney General*
*State of Hawai'i*

KWAME RAOUL
*Attorney General*
*State of Illinois*

AARON M. FREY
*Attorney General*
*State of Maine*

ANTHONY G. BROWN
*Attorney General*
*State of Maryland*

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*

DANA NESSEL
*Attorney General*
*State of Michigan*

KEITH ELLISON
*Attorney General*
*State of Minnesota*

AARON D. FORD
*Attorney General*
*State of Nevada*

JENNIFER DAVENPORT
*Attorney General*
*State of New Jersey*

RAÚL TORREZ
*Attorney General*
*State of New Mexico*

---

[1] The Attorneys General do not themselves appear as counsel of record in this case. Counsel of record for Amici Curiae are identified on the title pages and on page 15 of this brief, in addition to the concurrently-filed notices of appearance.

16

DAN RAYFIELD
*Attorney General*
*State of Oregon*

PETER F. NERONHA
*Attorney General*
*State of Rhode Island*

CHARITY R. CLARK
*Attorney General*
*State of Vermont*

JAY JONES
*Attorney General*
*Commonwealth of Virginia*

NICHOLAS W. BROWN
*Attorney General*
*State of Washington*

17

**United States Court of Appeals
for the Second Circuit**

**Federal Rules of Appellate Procedure Form 6.**

**Certificate of Compliance With Type-
Volume Limit**

1.   This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains <u>4,467</u> words.

2.   This document complies with the typeface requirements of Fed. R. App. P. 29(a)(4) and 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

Dated:  April 6, 2026

*/s/ Iram Hasan*

IRAM HASAN
  *Deputy Attorney General*
*Counsel of record for Amicus Curiae States of California, Arizona, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, and Washington; Commonwealths of Massachusetts and Virginia; and District of Columbia*

*/s/ Shannon Stevenson*

Shannon Stevenson
Solicitor General
Colorado Department of Law
*Counsel of record for Amicus Curiae State of Colorado*

18

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the Appellate Case Management System (ACMS). All counsel of record are registered ACMS users, and service will be accomplished by the ACMS system.

Dated:  April 6, 2026

/s/ Iram Hasan

IRAM HASAN
  *Deputy Attorney General*

*Counsel of record for Amicus Curiae States of California, Arizona, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Oregon, Rhode Island, Vermont, and Washington; Commonwealths of Massachusetts and Virginia; and District of Columbia*

19