# 26-156

*To be Argued by:  HENRY C. WHITAKER*

# United States Court of Appeals

**FOR THE SECOND CIRCUIT**
**Docket No. 26-156**

IN RE GRAND JURY SUBPOENAS
TO THE OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL,

*Petitioner-Appellee,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

## REPLY BRIEF FOR RESPONDENT-APPELLANT
## UNITED STATES OF AMERICA

TODD BLANCHE
*Acting Attorney General*

HENRY C. WHITAKER
*Counselor to the Attorney General*

RAJIT S. DOSANJH
*Assistant U.S. Attorney*
U.S. Attorney's Office
Northern District of N.Y.
100 South Clinton Street
Syracuse, NY  13261-7198
315-448-0672
Rajit.S.Dosanjh@usdoj.gov

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................. 1

ARGUMENT ......................................................... 3

I.  Mr. Sarcone Was Validly Serving as
    Acting United States Attorney When
    He Obtained the Grand Jury
    Subpoenas. .................................................... 3

    A.  The plain text of the FVRA does
        not limit §3345(a)(1) to
        incumbent first assistants. ..................... 3

    B.  The structure of §3345(a) does
        not support limiting Subsection
        (a)(1) to the moment the vacancy
        begins. ...................................................... 8

    C.  The statutory history of §3345(a)
        contradicts NYOAG's
        interpretation. ....................................... 11

    D.  Long-standing executive-branch
        practice confirms the plain
        meaning of §3345(a)(1). ........................ 14

II. Mr. Sarcone Was Authorized to Obtain
    the Grand Jury Subpoenas Pursuant to
    the Attorney General's Delegation of
    Authority ..................................................... 18

A.  The FVRA does not prohibit the delegation of a vacant office's delegable duties to a non-acting officer. ..................................................... 18

B.  The delegation to Mr. Sarcone was valid. .............................................. 21

C.  Mr. Sarcone was properly appointed as a special attorney and FAUSA. ......................................... 26

D.  Regardless of Mr. Sarcone's status as Acting U.S. Attorney, the subpoena should not be quashed .................................................. 28

CONCLUSION .................................................. 29

## TABLE OF AUTHORITIES

**Cases:**

*Adv. Disposal Servs. East, Inc. v.*
  *Nat'l Labor Relations Bd.*,
  820 F.3d 592 (3d Cir. 2016) ............................ 27

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
  35 F.4th 1328 (Fed. Cir. 2022) ....... 20, 21, 22, 26

*Dames & Moore v. Regan*,
  453 U.S. 654 (1981) ........................................ 17

*Eisenhauer v. Culinary Inst. of Am.*,
  84 F.4th 507 (2d Cir. 2023) .............................. 6

*Gonzales & Gonzales Bonds &*
  *Ins. Agency, Inc. v.*
  *U.S. Dep't. of Homeland Sec.*,
  107 F.4th 1064 (9th Cir. 2024) .................. 20, 25

*In re Grand Jury Subpoena Duces Tecum*,
  1 F.3d 87 (2d Cir. 1993) .................................. 28

*In re Order to Authorize Disclosure of*
  *Tax Returns*,
  2026 WL 63331 (N.D.N.Y. Jan. 8, 2026) ......... 24

*Infelice v. United States*,
  528 F.2d 204 (7th Cir. 1975) ........................... 23

*Kajmowicz v. Whitaker*,
  42 F.4th 138 (3d Cir. 2022) ............................. 25

*L.M.-M. v. Cuccinelli*,
  442 F. Supp. 3d 1 (D.D.C. 2020) ............... 17, 27

*Lamie v. U.S. Trustee,*
540 U.S. 526 (2004) ............................................ 8

*Lucia v. SEC,*
585 U.S. 237 (2018) ..................................... 7, 25

*Moody v. NetChoice, LLC,*
603 U.S. 707 (2024) ........................................... 26

*NLRB v. Noel Canning,*
573 U.S. 513 (2014) ............................................ 4

*NLRB v. SW Gen., Inc.,*
580 U.S. 288 (2017) ............................... 5, 16, 25

*Padilla v. Hanft,*
389 F. Supp. 2d. 678 (D.S.C. 2005).................... 7

*Ross v. Blake,*
578 U.S. 632 (2016) .......................................... 12

*Rumsfeld v. Padilla,*
542 U.S. 426 (2004) ........................................... 7

*United States v. Birdman,*
602 F.2d 547 (3d Cir. 1979) ............................. 23

*United States v. Giordano,*
416 U.S. 505 (1974) .......................................... 19

*United States v. Giraud,*
160 F.4th 390 (3d Cir. 2025) ................. 6, 17, 22

*United States v. Gonzales,*
520 U.S. 1 (1997) .............................................. 23

*United States v. Hall,*
145 F.2d 781 (9th Cir. 1944) ............................ 22

iv

*United States v. Hartwell*,
　73 U.S. 385 (1867) ...................................... 7, 26

*United States v. Martins*,
　288 F. 991 (D. Mass. 1923) ............................ 23

*United States v. Ndissi*,
　No. 2:25-CR-00143-CR-1,
　2026 WL 318836 (D. Vt. Feb. 5, 2026) ............ 21

*United States v. Ramirez*,
　807 F. Supp. 3d 1086 (C.D. Cal. 2025) ...... 21, 25

*United States v. Ramirez-Martinez*,
　No. 1:22-CR-01721-KWR,
　2026 WL 113431 (D.N.M. Jan. 14, 2026) ........ 21

*United States v. Wrigley*,
　520 F.2d 363 (8th Cir. 1975) ........................... 22

**Federal Statutes, Rules and Other
Authorities:**

5 U.S.C. §101 ..................................................... 24

5 U.S.C. §105 ..................................................... 24

5 U.S.C. §3345 .............................................. 12, 17

5 U.S.C. §3345(a) ........................................passim

5 U.S.C. §3345(a)(1) ....................................passim

5 U.S.C. §3345(a)(2) ....................................passim

5 U.S.C. §3345(a)(3) ....................................passim

5 U.S.C. §3345(b) .............................................. 10

v

5 U.S.C. §3345(b)(1) .................................. 8, 16, 17

5 U.S.C. §3346 .............................................. 10, 12

5 U.S.C. §3347 .............................................. 18, 20

5 U.S.C. §3347(a) ............................................... 19

5 U.S.C. §3347(b) .................................... 19, 20, 21

5 U.S.C. §3348 ....................................................... 20

5 U.S.C. §3348(a)(2) ....................................... 20, 24

5 U.S.C. §3348(d) ............................................... 24

6 U.S.C. §113(a)(1)(A) .......................................... 9

7 U.S.C. §2210 ....................................................... 9

7 U.S.C. §2211 ....................................................... 9

12 U.S.C. §5491(b)(5) ........................................... 9

18 U.S.C. §245(a)(1) ........................................... 25

22 U.S.C. §2651a(a)(2) .......................................... 9

26 U.S.C. §6103(i) .............................................. 24

28 U.S.C. §504 ....................................................... 9

28 U.S.C. §508(a) ................................................. 9

28 U.S.C. §509 .............................................. 19, 22

28 U.S.C. §510 ....................................... 19, 22, 25

28 U.S.C. §515 ...............................................passim

28 U.S.C. §515(a) ......................................... 22, 23

vi

28 U.S.C. §516 ................................................ 19

28 U.S.C. §517 ................................................ 19

28 U.S.C. §518 ................................................ 19

28 U.S.C. §519 ................................................ 19

28 U.S.C. §2242 ................................................ 7

28 U.S.C. §2243 ................................................ 7

29 U.S.C. §154(a) ............................................. 6

29 U.S.C. §552 ................................................. 9

31 U.S.C. §301(c) ............................................. 9

38 U.S.C. §304 ................................................. 9

43 U.S.C. §1452 ............................................... 9

44 U.S.C. §2103(c) ........................................... 9

Fed. R. Crim. P. 17(c)(2) ................................... 28

28 C.F.R. §0.15 ............................................... 22

28 C.F.R. §0.15(a) ........................................... 19

## Legislative History:

144 Cong. Rec. S12822
   (daily ed. Oct. 21, 1998)
   (statement of Sen. Thompson) ........................ 13

S. Rep. 105-250, 105th Cong., 2d Sess. 1998,
   1998 WL 404532 (July 15, 1998) .................... 13

# United States Court of Appeals
## FOR THE SECOND CIRCUIT
### Docket No. 26-156

IN RE GRAND JURY SUBPOENAS
TO THE OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL,
*Petitioner-Appellee,*

v.

UNITED STATES OF AMERICA,
*Respondent-Appellant.*

## REPLY BRIEF FOR THE
## UNITED STATES OF AMERICA

## PRELIMINARY STATEMENT

The Federal Vacancies Reform Act (FVRA) provides a common-sense default rule: When a presidentially appointed and Senate-confirmed office becomes vacant, the next-highest-ranking official leads the office in an acting capacity while the office remains vacant, subject to the FVRA's time limits. 5 U.S.C. §3345(a)(1). John Sarcone III was appointed to the next-highest-ranking office, the First Assistant U.S. Attorney (FAUSA), in the U.S. Attorney's Office for the Northern District of New York at a time when the highest office, the U.S. Attorney, was vacant. For that reason, he was fully empowered to perform all the functions and

duties of the office of U.S. Attorney in an acting capacity. And regardless, the United States Attorney General ("Attorney General") also validly delegated to Mr. Sarcone her own authority to conduct and supervise litigation. Nothing in the FVRA proscribes such delegations, as all three branches have long recognized.

The Office of the New York State Attorney General ("NYOAG") seeks to distract the Court from the paucity of its legal arguments with pages and pages of political attacks on the President, the Department of Justice, and Mr. Sarcone. NYB:1-15, 51-53.[1] None of that has any relevance to the issue in this appeal: whether Mr. Sarcone had lawful authority to obtain information for the grand jury and supervise the underlying investigation.

When NYOAG finally turns to that issue, it has nothing persuasive to say. Its principal responses are policy arguments based on the circumstances of this case and the result of the FVRA's application to the office of U.S. Attorney. But the FVRA is a generally applicable statute that applies throughout government and across presidential administrations. The Court should not accept NYOAG's invitation to distort the text of the FVRA

---

[1] References to "NYB" and "USB" are to NYOAG's responsive brief and the United States' principal brief, respectively. References to "A" and "SA" are to the joint appendix and special appendix, respectively.

to vindicate NYOAG's case-specific grievances or undermine widespread practices that are critically important to enable smooth presidential transitions and deal with extended vacancies—no matter what party happens to lead the Executive Branch.

The Court should reverse.

## ARGUMENT

### I. Mr. Sarcone Was Validly Serving as Acting United States Attorney When He Obtained the Grand Jury Subpoenas.

### A. The plain text of the FVRA does not limit §3345(a)(1) to incumbent first assistants.

As the government's principal brief showed, the plain text of the FVRA makes any currently serving first assistant the acting PAS officer by default. The statute says that "the first assistant *to the office* of such officer shall perform" the functions and duties of the office in an acting capacity. 5 U.S.C. §3345(a)(1) (emphasis added). Not the first assistant to any particular "officer." Not the first assistant who served at the specific time the vacancy arose. The first assistant *to the office*, period. The statute is indeed "automatic" and "self-executing." NYB:27. If a vacancy exists, and the FVRA's time limits have not expired, whoever is occupying the office of first assistant by default automatically is the acting officer. *See* USB:20-21.

3

In response, NYOAG insists that a qualifying first assistant must not only be "the first assistant to the office," 5 U.S.C. §3345(a)(1), but also must have been the "incumbent" first assistant who was serving at the time the vacancy arose. NYB:25. That atextual proposal finds no foothold in the statute.

NYOAG points to "Congress's choice of verbs" in Section 3345(a), which provides that the FVRA may be invoked when a PAS official "dies, resigns, or is otherwise unable to" serve. It interprets those introductory verbs to mean that "the automatic succession provision is triggered by a 'single, immediate occurrence'—when the vacancy begins." NYB:25. But that the FVRA is first "triggered" when the vacancy initially arises in no way means that its operation is frozen in place at that moment, such that only the incumbent first assistant may serve as acting. On the contrary, a vacancy is a "continuing state." *NLRB v. Noel Canning*, 573 U.S. 513, 539 (2014). That must be the case here because Subsection (a)(1) provides that when a PAS official "dies" or "resigns," "the first assistant to the office … shall perform the functions and duties of the office." The first assistant is eligible to perform those functions not only at the precise triggering moment of death, resignation, or unavailability, but also throughout the duration of the vacancy. So too, whoever happens to be "the first assistant to the office," 5 U.S.C. §3345(a)(1), for the duration of the vacancy is eligible to be the acting officer by default.

4

Subsections (a)(2) and (a)(3) underscore that the introductory verbs used in Section 3345(a) refer to a continuing vacancy, rather than a snapshot in time when the vacancy first arises. Those verbs also trigger the President's authority to designate acting officials under subsections (a)(2) and (a)(3). But if the triggering clause referred exclusively to "the moment the vacancy arises" and not "at any time after a vacancy arises," NYB:30, 31, then the President could not use (a)(2) and (a)(3) to fill vacant positions *after* that particular moment passes—*i.e.*, after the moment the previous PAS officer dies, resigns, or first becomes incapacitated. Yet as NYOAG acknowledges, the President's authority under subsections (a)(2) and (a)(3) is not so limited. *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 309 (2017); NYB:27 (acknowledging that *SW Gen.* permitted the designation of an acting official after the vacancy arose).[2] Moreover, (a)(2) plainly

_____

[2] In *SW Gen.*, the PAS general counsel resigned in June 2010. 580 U.S. at 297. The Supreme Court observed that after the President nominated his preferred candidate in November 2011, the President could have used (a)(2) and (a)(3) to fill that position. *Id.* at 297, 309. Contrary to NYOAG's suggestion (NYB:27), the Court's failure to mention the option of relying on (a)(1) was not because "the President has *no* power" to invoke (a)(1) for a non-incumbent first assistant; it was because the President could not rely on (a)(1) in *that particular case*, as the General Counsel's first

5

authorizes the President to designate *any* PAS officer as an acting official—not simply those PAS officers whose appointments preceded the vacancy. *See United States v. Giraud*, 160 F.4th 390, 398 (3d Cir. 2025) (noting that (a)(2) applies to "those the Senate has already confirmed"). The Court cannot cogently construe the very same introductory verbs to create an incumbency requirement in (a)(1), but not in (a)(2).

NYOAG invokes the *ejusdem generis* canon of construction to argue that "is unable to perform" must refer to a single moment in time because "dies" and "resigns" refer to a single moment in time. NYB:25-26. But applying *ejusdem generis* here means only that to trigger the FVRA, an officer's inability must be akin to death or resignation in that it causes sustained absence from the office. *See Eisenhauer v. Culinary Inst. of Am.*, 84 F.4th 507, 521 (2d Cir. 2023) (explaining *ejusdem generis* means that "a general term that follows specific ones … refer[s] only to items of the same 'class' as the specific ones"). Congress's use of the present, continuing phrase "is otherwise unable" shows that it is a continuing absence from office—which is consistent with the terms "dies" or "resigns"—that triggers the FVRA, not the precise moment the absence begins.

NYOAG next tries to glean its extra-statutory rule from Section 3345(a)(1)'s use of the definite

---

assistant was appointed by *the NLRB*. 29 U.S.C. §154(a).

article—"*the* first assistant to the office." NYB:26. But the definite article here identifies the relevant *position*, not a particular *person* who occupies that position, much less at a particular time. The case NYOAG itself cites proves the point. In *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court held that there is only one proper respondent to a federal habeas petition—the warden of the facility where the petitioner is being held—because that is "the person who has custody over [the petitioner]." *Id*. at 434 (quoting 28 U.S.C. §§2242, 2243). But the Court never suggested that the use of the definite article meant that only the warden who held office on the day the petition was filed was the proper respondent, and such a requirement would make no sense. *See Padilla v. Hanft*, 389 F. Supp. 2d. 678, 681 n.7 (D.S.C. 2005) (substituting a new warden as respondent who later took office). The FVRA makes that even clearer by identifying the relevant position as "the first assistant *to the office* of the officer," not the first assistant to a specific officer. 5 U.S.C. §3345(a)(1) (emphasis added).

Citing nothing, NYOAG responds that "the FVRA's use of 'office' … focuses on the moment the vacancy arises." NYB:31. Not so: an "office" is a continuing position established by law that persists even after a particular person no longer holds it. *See, e.g.*, *Lucia v. SEC*, 585 U.S. 237, 245 (2018); *United States v. Hartwell*, 73 U.S. 385, 385 (1867). Use of that term in fact proves that the statute focuses on whoever is second-in-command at present, rather than the instant in time the vacancy arose.

7

Other parts of the statute reinforce the government's reading of §3345(a)(1). In §3345(a)(3) and (b)(1), Congress created eligibility requirements that turned on the circumstances at and before the time of the vacancy, and that type of language is entirely absent from (a)(1). USB:22-23.

NYOAG tries to distinguish (a)(3) and (b)(1) by asserting that, in its view, (a)(1) "does not impose backward-looking constraints" because it "focuses exclusively on the state of the world when the vacancy occurs." NYB:33. But that fails to explain why, if that is what Congress intended, (a)(1) did not include express temporal-focused language to that effect, just as (a)(3) and (b)(1) do.

## B. The structure of §3345(a) does not support limiting Subsection (a)(1) to the moment the vacancy begins.

NYOAG pivots to arguing that declining to adopt its atextual rule would render the presidential designation provisions in subsections (a)(2) and (a)(3) "essentially superfluous." NYB:28-29, 37. Inferences drawn from even statutory surplusage are insufficient reason to rewrite the plain terms of a statute. *See, e.g.*, *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004). It is even less plausible that less-than-complete surplusage can do that.

8

Here, moreover, subsections (a)(2) and (a)(3) are not remotely redundant even without NYOAG's proposed incumbency requirement. As the United States' principal brief explained, USB:31-33, the Executive Branch must often rely on (a)(2) and (a)(3) to designate officials to perform the duties of vacant offices because the mechanism under (a)(1) frequently is not available.

Such circumstances are not "edge-case hypotheticals." NYB:37. Many important agencies have a PAS first assistant, *see, e.g.*, 28 U.S.C. §§504, 508(a) (Department of Justice); 22 U.S.C. §2651a(a)(2) (Department of State); 6 U.S.C. §113(a)(1)(A) (Department of Homeland Security); 7 U.S.C. §§2210, 2211 (Department of Agriculture); 43 U.S.C. §1452 (Department of the Interior); 38 U.S.C. §304 (Department of Veterans Affairs); 29 U.S.C. §552 (Department of Labor); 31 U.S.C. §301(c) (Department of the Treasury), and it is not uncommon to find agency-head-appointed first assistants at smaller agencies, *see, e.g.*, 12 U.S.C. §5491(b)(5) (Bureau of Consumer Financial Protection); 44 U.S.C. §2103(c) (National Archives and Records Administration). In those circumstances, if the positions of both agency head and first assistant are vacant, the only way to designate an acting official is for the President to invoke (a)(2) and (a)(3). Presidents therefore have repeatedly and recently used (a)(2) and (a)(3) to address PAS vacancies, including over two dozen examples at the start of this administration alone for such positions as Secretary of Defense, Secretary of State, Secretary of Commerce,

Attorney General, and Secretary of Treasury. USB:32-33; *see* https://perma.cc/79PA-GJFQ. And even when there is no vacancy to fill, the President frequently invokes (a)(2) and (a)(3) to create standing orders of succession for agencies by executive order. *See* USB:33 & n.14.

There is no substance to NYOAG's citationless assertion that the United States' "position would impose no meaningful limits on who can serve in acting positions." NYB:35. A person may be the acting official under Section 3345(a)(1) by default only if appointed as a first assistant. That appointment can sometimes be made by the agency head, but in many cases, it must be by the President after Senate confirmation. If there are vacancies in the positions of both the agency head and its PAS first assistant, only the President can designate someone to serve as acting agency head under the FVRA. In doing so, the President is limited to people who have been confirmed by the Senate or who have served in the agency above a certain pay rate for at least 90 days in the year preceding the vacancy. 5 U.S.C. §3345(a)(2), (a)(3). And even if a first assistant is in place, that person is "subject to the time limitations of section 3346," *Id.* §3345(a)(1). Finally, first assistants who are not PAS themselves are generally ineligible to be both the acting official and the nominee. *Id.* §3345(b).

NYOAG cannot "imagine" why Congress would precisely define the President's designation authority under (a)(2) and (a)(3) while allowing the

President and heads of agencies "to select anyone they like" under (a)(1). NYB:28. Again, the premise is false because (a)(1) does not allow the Executive Branch "carte blanche," NYB:28, as it must follow the rules imposed by Congress for appointing the office's second-in-command. More important, the point escapes NYOAG's powers of imagination because NYOAG misunderstands how (a)(1), (a)(2), and (a)(3) interact. On the one hand, Subsection (a)(1) is an automatic default provision that generally is available to have an acting official in place so that government can continue to function. Subsections (a)(2) and (a)(3), on the other hand, give the President additional, if bounded, flexibility to name an acting official if (a)(1) is unavailable, or if the President wishes an official other than the first assistant to serve as acting. That scheme sensibly gives the Executive Branch considerable flexibility to keep the government running with its preferred personnel.

## C. The statutory history of §3345(a) contradicts NYOAG's interpretation.

1. NYOAG ignores the United States' argument concerning the *statutory* history of the FVRA and confuses it with the separate argument concerning the Act's *legislative* history. NYB:37-39. As the United States explained in its principal brief, USB:23-24, the predecessor to the FVRA, the Vacancies Act, provided that if the PAS officer died, resigned or was sick or absent, "his first assistant" would "perform the duties of the office until a successor is appointed or the absence or

11

sickness stops." 5 U.S.C. §§3345, 3346 (1997). With the passage of the FVRA in 1998, Congress abandoned the "his first assistant" language, replacing it with "the first assistant to the office of such officer." 5 U.S.C. §3345(a). This significant change in the statutory text removed the requirement that the ascension of the first assistant can be triggered only by the death, departure, or incapacity of a particular PAS officeholder. NYOAG has nothing to say about this change, and its interpretation of §3345(a)(1) would render this amendment meaningless, contrary to the Supreme Court's guidance that "[w]hen Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Ross v. Blake*, 578 U.S. 632, 641-42 (2016) (cleaned up).

2. As for the legislative history, the United States agrees that there is no need to resort to it because the FVRA's text, structure, and statutory history demonstrate that Mr. Sarcone validly served as Acting U.S. Attorney. But to the extent relevant, NYOAG's version of that history suffers from critical errors.

NYOAG faults the United States for failing to cite statements in the legislative history that, according to NYOAG, "unequivocally explain[] that the insertion of the phrase 'to the office'" was merely "housekeeping" and "not intended to alter the provision's meaning." NYB:39. But NYOAG mistakenly relies on a Senate Report from July 15, 1998, that concerned an *earlier* version of the bill

12

with critically different language that defined the first assistant as the "first assistant of such officer," S. Rep. No. 105-250, at 25, not the "first assistant to the office of such officer," 5 U.S.C. §3345(a)(1). Naturally, the Senate Report disclaimed an intent to alter the meaning of "first assistant" under the Vacancies Act because the bill did not, at that point, make any significant change to the relevant provision—unlike the version that was ultimately enacted.

NYOAG also relies on a later statement by Senator Thompson that "the change in wording is not intended to alter case law on the meaning of the term 'first assistant.'" 144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998). But that statement was made in response to questions that had "arisen concerning who might be the vacant officer's first assistant if the acting officer dies or if the acting officer resigns while a permanent nomination is pending." *Id*. Whatever Senator Thompson intended to convey here, it does not diminish the clarity of his preceding statement that the change from "first assistant to the officer" to "first assistant to the office" was "made to 'depersonalize' the first assistant." *Id*. That statement tends to support that the FVRA does not limit (a)(1)'s default provision to only the incumbent first assistant.

13

### D. Long-standing executive-branch practice confirms the plain meaning of §3345(a)(1).

NYOAG does not seriously dispute that its reading of the statute would require upending a quarter-century of Executive Branch practice of having agency heads appoint first assistants after a vacancy arises—a practice endorsed by the Office of Legal Counsel (OLC), *and* by the Government Accountability Office (GAO), which is often referred to as Congress's "watchdog," and which Congress has charged with monitoring FVRA compliance.

NYOAG faults the United States for identifying only three specific examples of post-vacancy first assistants. NYB:39-40. But those were just examples. Every presidential administration this century has routinely relied on post-vacancy first assistants to serve as acting officials under the FVRA. The United States is aware of at least 31 examples *at Main Justice alone* from the Bush, Obama, Trump, and Biden administrations.[3]

[3] Glenn Schmitt, Acting Director, National Institute of Justice (Bush); Joyce Branda, Acting Assistant Attorney General, Civil Division (Obama); Molly Moran, Acting Assistant Attorney General, Civil Rights Division (Obama); Karl Thompson, Acting Assistant Attorney General, Office of Legal Counsel (Obama); Jonathan Wroblewski, Acting Assistant Attorney General, Office of Legal Policy (Obama); David Barron, Acting Assistant Attorney General, Office of Legal

Counsel (Obama); Jonathan Cedarbaum, Acting Assistant Attorney General, Office of Legal Counsel (Obama); Noel Francisco, Acting Solicitor General (Trump); Jeffrey Wall, Acting Solicitor General (Trump); Thomas Wheeler, Acting Assistant Attorney General, Civil Rights Division (Trump); Samuel Ramer, Acting Assistant Attorney General, Office of Legislative Affairs (Trump); Edward O'Callaghan, Acting Assistant Attorney General, National Security Division (Trump); Richard Zuckerman, Acting Assistant Attorney General, Tax Division (Trump); Ryan Newman, Acting Assistant Attorney General, Office of Legal Policy (Trump); Jeffrey Wood, Acting Assistant Attorney General, Environment and Natural Resources Division (Trump); John Cronan, Acting Assistant Attorney General, Criminal Division (Trump); Curtis Gannon, Acting Assistant Attorney General, Office of Legal Counsel (Trump); Andrew Finch, Acting Assistant Attorney General, Antitrust Division (Trump); Katharine Sullivan, Acting Director, Office on Violence Against Women (Trump); Matthew Colangelo, Acting Associate Attorney General (Biden); John Carlin, Acting Deputy Attorney General (Biden); Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel (Biden); Christopher Schroeder, Acting Assistant Attorney General, Office of Legal Counsel (Biden); Allison Randall, Acting Director, Office on Violence Against Women (Biden); Susan Davies, Acting Assistant Attorney General, Office of Legal Policy (Biden); Peter Hyun, Acting Assistant Attorney

15

There are doubtless many more examples throughout all Executive Branch agencies. Indeed, NYOAG ignores that its position would hobble the Executive Branch during transitions between Presidential administrations—a time when most PAS officials and many of their first assistants have all resigned *before* the transition, and when the new Administration needs to temporarily fill those vacancies with individuals who personally support its policies, rather than holdover career officials.

NYOAG asks the Court to ignore that practice because of the rejection of a much weaker argument regarding "post-enactment practice" in *SW Gen.*, 580 U.S. at 308. NYB:39-41. In that case, which concerned §3345(b)(1) of the FVRA, the guidance documents "paid the matter little attention," making only "conclusory statements

General, Office of Legislative Affairs (Biden); Brian Boynton, Acting Assistant Attorney General, Civil Division (Biden); Helaine Greenfield, Acting Assistant Attorney General, Office of Legislative Affairs (Biden); Nicholas McQuaid, Acting Assistant Attorney General, Criminal Division (Biden); Brian Fletcher, Acting Solicitor General (Biden); Elizabeth Prelogar, Acting Solicitor General (Biden). Examples were found by comparing Justice Department records of acting officials' first-assistant appointments with GAO's database of prior vacancies. *See Fed. Vacancies for Prior Admins.*, GAO, https://tinyurl.com/kaetsj76.

16

about subsection (b)(1), with no analysis." *Id*. Here, by contrast, an OLC opinion squarely addresses and analyzes whether a non-incumbent first assistant may serve in an acting capacity under §3345(a)(1), and the GAO letter explicitly agrees with that analysis. USB:29-30. Congress has not acted to alter that shared view, which has been consistent for more than two decades. *See Dames & Moore v. Regan*, 453 U.S. 654, 686 (1981).

NYOAG also complains that United States did not identify "a single example of a post-vacancy first assistant serving in an acting capacity prior to the enactment of the FVRA." NYB:40 (quoting *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 27-28 (D.D.C. 2020)). The same criticism was leveled by the Third Circuit in *Giraud*, 160 F.4th at 400. But pre-FVRA statutes contained express language authorizing only incumbent first assistants to serve as acting officials. *See* 5 U.S.C. §§3345 (1997) (referring to the PAS officer and "his first assistant"). Thus, the lack of pre-enactment examples is hardly surprising, while the emergence of a post-enactment practice of appointing non-incumbent first assistants to serve in an acting capacity, *supra* pp. 14-16 & n.3, confirms that the FVRA made a significant change to the law by eliminating the previous incumbency requirement.

17

## II. Mr. Sarcone Was Authorized to Obtain the Grand Jury Subpoenas Pursuant to the Attorney General's Delegation of Authority.

Even if Mr. Sarcone were not validly serving as the Acting U.S. Attorney, he would still have been empowered to obtain the grand jury subpoenas and conduct the underlying investigation in his capacity as FAUSA by delegation from the Attorney General. *See* USB:36-58. NYOAG does not dispute that the Attorney General has authority to conduct and supervise investigations and litigation in the NDNY, and that she could delegate that authority to Mr. Sarcone. Instead, NYOAG argues principally that the FVRA's exclusivity provision, 5 U.S.C. §3347, bars the Attorney General's delegation. NYB:42-53. That is wrong under the plain text of the statute, and NYOAG's policy arguments cannot change that.

## A. The FVRA does not prohibit the delegation of a vacant office's delegable duties to a non-acting officer.

1. The FVRA authorizes service as an "acting officer" and is generally the exclusive means for authorizing that type of service. But it does not prohibit the exercise of lawfully delegated powers by non-acting officials—and it certainly does not prohibit an agency head from delegating *her own* powers independent of the vacant office. *See* USB:36-58. An "acting officer" is one who can perform *all* the functions and duties of the vacant

18

office without qualification—*i.e.*, the person who can fully act as the absent officer. Indeed, that is why the person uses the title of the vacant office— *e.g.*, Acting U.S. Attorney—and why the title has significance. The FVRA is the exclusive means for temporarily authorizing service as an acting official. 5 U.S.C. §3347(a).

Delegation is different. A delegation of authority occurs when one officer empowers another official to perform a function vested in that officer. Delegations are limited by the scope of the delegation; they are not necessarily limited to times of vacancies; they do not confer titles; and they are valid only if the function is delegable. *See, e.g., United States v. Giordano*, 416 U.S. 505, 512- 23 (1974). A delegation cannot include any functions vested exclusively in the vacant PAS office by statute or regulation, *i.e.*, non-delegable duties.

So although the FVRA prohibits the use of general delegation authority to establish an acting officer who can exercise all delegable *and* non- delegable duties of an office, *see* 5 U.S.C. §3347(b), it does not restrict an agency head's authority to otherwise delegate her delegable duties. The Attorney General has the authority to supervise litigation in the NDNY, 28 U.S.C. §§509, 515-19, and that authority is delegable, 28 U.S.C. §§510, 515. Mr. Sarcone thus has the authority to supervise the office regardless of whether he holds the office of U.S. Attorney in an acting capacity.

19

Indeed, even if there were a Senate-confirmed U.S. Attorney in place, the Attorney General *still* could have delegated her parallel powers to Mr. Sarcone and further directed the U.S. Attorney to follow Mr. Sarcone's supervision, just as U.S. Attorneys around the country are subject to supervision by the Deputy Attorney General pursuant to a delegation of the Attorney General's authority. *See* 28 C.F.R. §0.15(a). The FVRA plainly would have nothing to say about such a delegation, and the existence of a vacancy does not alter that conclusion.

The FVRA itself recognizes the distinction between performing the delegable duties of an office and occupying the office in an acting capacity. Section 3348 provides that any *non-delegable* function performed by a non-acting official "shall have no force or effect" and "may not be ratified." 5 U.S.C. §3348(a)(2), (d); *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't. of Homeland Sec.*, 107 F.4th 1064, 1072-73 (9th Cir. 2024). Critically, the statute does not say the same when a non-acting official performs the *delegable* duties of a vacant office.

GAO has endorsed that plain-text interpretation of §3347. *See* USB:40-41 (citing the GAO Bradbury Letter). The Ninth and Federal Circuits have too. *See Gonzales,* 107 F.4th at 1078. ("§3347(b) clarifies that general vesting-and-delegation statutes are not sufficient to authorize the department to choose the *acting officer* under the FVRA…") (emphasis added); *Arthrex, Inc. v.*

20

*Smith & Nephew, Inc.*, 35 F.4th 1328, 1338 (Fed. Cir. 2022) (§3347(b) "provides that a statute granting the head of an agency 'general authority … to delegate [his] duties' does not exempt the agency from the FVRA") (quoting 5 U.S.C. §3347(b)). And three district courts have recognized that if an invalidly serving Acting U.S. Attorney continued to supervise prosecutions in that role, his actions in that capacity would violate §3347, but determined that he could continue supervising cases in his capacity as the FAUSA pursuant to delegated authority. *See United States v. Ramirez,* 807 F. Supp. 3d 1086, 1112-14 (C.D. Cal. 2025); *United States v. Ramirez-Martinez*, No. 1:22-CR-01721-KWR, 2026 WL 113431, *23-24 (D.N.M. Jan. 14, 2026); *United States v. Ndissi*, No. 2:25-CR-00143-CR-1, 2026 WL 318836, at *4-5 (D. Vt. Feb. 5, 2026). Puzzlingly, NYOAG claims that *Ramirez* and *Ramirez-Martinez* rejected this position, NYB:42-43, when they did exactly the opposite.

**B. The delegation to Mr. Sarcone was valid.**

1. Contrary to NYOAG's argument, NYB:49, 60-65, and the district court's decision below, SA:19, the breadth of the Attorney General's delegation of authority to Mr. Sarcone as a special attorney, pursuant to 28 U.S.C. §515 and related statutes, did not render the delegation invalid. USB:52-54.

In *Arthrex*, the Federal Circuit held that the exclusivity clause of FVRA did not prohibit an officer's exercise of a delegable function pursuant

21

to the *wholesale* delegation of the delegable functions of a vacant PAS office. 35 F.4th at 1335-38. Although NYOAG attempts to distinguish *Arthrex*, even the Third Circuit acknowledged that its *Giraud* opinion conflicted with *Arthrex*. *See Giraud*, 160 F.4th at 405 (expressly splitting with *Arthrex*).

Broad delegations are common and have not historically been challenged in litigation. Take, for example, the Deputy Attorney General's authority to exercise all the delegable functions of the Attorney General, *see* 28 C.F.R. §0.15, which encompasses not just all the delegable functions of every U.S. Attorney, but also all the delegable functions of the many other PAS officers in the Department of Justice, *see* 28 U.S.C. §§509, 510.

Likewise, 28 U.S.C. §515 is broadly worded, permitting the Attorney General to direct any special attorney to "conduct any kind of legal proceeding … including grand jury proceedings … which United States attorneys are authorized by law to conduct." 28 U.S.C. §515(a). Accordingly, for more than a century, courts have construed §515 and its precursor to confer broad authority upon the Attorney General, other DOJ officers, and her special attorney appointees "to institute litigation, to enter into pending litigation, and to co-operate with the district attorney or to proceed to handle such litigation independent of" the U.S. Attorney. *United States v. Hall*, 145 F.2d 781, 785 (9th Cir. 1944); *see United States v. Wrigley*, 520 F.2d 363, 367 n.10 (8th Cir. 1975) (§515(a) "is a broad grant

of authority"); *United States v. Martins*, 288 F. 991, 992 (D. Mass. 1923); *cf. United States v. Birdman*, 602 F.2d 547, 561 n.62 (3d Cir. 1979) (citing *Wrigley*).

For example, one court upheld a §515(a) appointment "'to prosecute unspecified persons for unspecified crimes in the Eastern District of Wisconsin and other districts.'" *Infelice v. United States*, 528 F.2d 204, 206 (7th Cir. 1975). Another upheld an appointment to prosecute specified cases "and such other cases and matters as may be assigned to you." *Martins*, 288 F. at 992. And *Wrigley* upheld §515(a) appointments to conduct "any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct." 520 F.2d at 362. The Eighth Circuit rejected the argument that such an appointment "would allow the Attorney General to usurp, through the appointment of special attorneys, the function of the United States Attorneys." *Id.* at 365, 367. All those cases faithfully applied §515's text, because "any" means everything the Attorney General authorized the appointee to do. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").

2. NYOAG protests that in this case, a broad delegation should not be permitted because it allows the Attorney General to create a "de facto" U.S. Attorney. But as discussed in the United

23

States' opening brief, USB:45-46, there are formal as well as practical distinctions between service as a delegee and service as an acting official. A delegee cannot exercise any exclusive, non-delegable functions of the office, and if he purported to, those actions would be void under the FVRA and could not be ratified. 5 U.S.C. §3348(a)(2), (d). Duties could be made non-delegable by regulation or statute at any time, and a delegee may be forced to litigate the delegability of functions. *See* USB:54 n.19.

The district court expressly recognized that difference when it held, in a separate matter, that Mr. Sarcone, in his capacity as FAUSA, could not be delegated the authority to seek disclosure of tax information pursuant to 26 U.S.C. §6103(i). *See In re Order to Authorize Disclosure of Tax Returns*, 2026 WL 63331, at *3 (N.D.N.Y. Jan. 8, 2026); NYB:48 n.9. Mr. Sarcone was vulnerable to that challenge only because, in his capacity as FAUSA, he could exercise only delegable authority, whereas an Acting U.S. Attorney would be fully empowered to exercise all authority of a U.S. Attorney, both delegable and non-delegable.

But even if there were no functional differences in the context of the office of U.S. Attorney, that would not justify an atextual interpretation of the FVRA, which applies to all Executive Branch PAS officers unless specifically excluded. 5 U.S.C. §§101, 105, 3345(a). The difference between acting service and exercising delegated functions would still have significance for many other PAS officials

24

under the FVRA. For example, because the power to appoint inferior officers is a non-delegable function constitutionally vested in an agency head, *Lucia*, 585 U.S. at 244, an Acting Attorney General may appoint inferior officers under the FVRA, but an individual who merely has been delegated the Attorney General's powers under 28 U.S.C. §510 may not. Likewise, an Acting Assistant Attorney General could approve civil-rights prosecutions under 18 U.S.C. §245(a)(1), but an attorney merely delegated supervisory authority over the Civil Rights Division could not. That example is particularly illuminating because it was the Clinton Administration's use of a general delegation statute to install an Acting Assistant Attorney General for the Civil Rights Division that precipitated the FVRA. *See SW Gen.*, 580 U.S. at 295. The Court should not narrow the Attorney General's well-established delegation authority based on the fortuity of how the FVRA applies to the office of U.S. Attorney. And regardless, other Circuits have rejected similar functional arguments regarding the FVRA, recognizing that such complaints are properly directed at Congress, not the courts. *See Gonzales*, 107 F.4th at 1080; *Arthrex*, 35 F.4th at 1337; *Kajmowicz v. Whitaker*, 42 F.4th 138, 150-51 (3d Cir. 2022); *Ramirez*, 807 F. Supp. 3d at 1114.

In all events, it ultimately does not matter whether the Attorney General could delegate all the delegable functions of a U.S. Attorney for purposes of this case. The question here is whether the Attorney General could delegate to Mr.

25

Sarcone the authority to oversee an investigation and obtain grand jury subpoenas. Neither NYOAG nor the district court have ever disputed that the authority to supervise an investigation and obtain a subpoena is a delegable function. Even if the Attorney General's order were unlawful in other applications involving non-delegable functions not before the Court, that would be no basis for invalidating the order as applied to this case. *See Arthrex*, 35 F.4th at 1339 n.5 (declining to address whether functions of the Director that were not directly at issue were delegable); *cf. Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (facial challenge can succeed only if the challenger establishes that the law "lacks a 'plainly legitimate sweep'").

## C. Mr. Sarcone was properly appointed as a special attorney and FAUSA.

NYOAG asserts that the delegation to Mr. Sarcone under §515 and his designation as FAUSA were invalid because they were not directed by the Attorney General herself or approved by her. NYB:60, 63. That assertion is contradicted by the Attorney General's written confirmation that Mr. Sarcone's appointment as a special attorney and designation as FAUSA were originally "carried out" by her subordinates at her "direction" and with her "approval." A:2095. Accordingly, the delegation and designation were the actions of the Attorney General in the first instance, wholly apart from any later ratification. *See United States v. Hartwell,* 73 U.S. (6 Wall.) 385, 392 (1867)

26

(finding sufficient for Appointments Clause purposes an appointment carried out "by the assistant treasurer with the approbation of the Secretary of the Treasury"). When the Attorney General "ratified" Mr. Sarcone's designation, she thus was both clarifying that the original appointments were in fact made by her in the first instance and curing any arguable defect that might exist. In any event, such ratifications are permissible. *See, e.g.*, *Adv. Disposal Servs. East, Inc. v. Nat'l Labor Relations Bd.*, 820 F.3d 592, 602 (3d Cir. 2016) (upholding the NLRB's ratification of "all administrative, personnel, and procurement matters" that had previously been approved by an improperly appointed Board).

Relying on an inapposite district-court decision, NYOAG claims that Mr. Sarcone was not the first assistant under the FVRA because he was not "an 'assistant' to a principal." NYB:64 (quoting *L.M.-M.*, 442 F. Supp. at 25). But the claimed first assistant in *L.M.-M.* occupied an office that was created after the vacancy arose and would cease to exist after the vacancy was filled. *See L.M.M.*, 442 F. Supp. 3d at 26. The court expressly distinguished that situation from one like Mr. Sarcone's, where the first assistant is appointed after the vacancy arises to an office that pre-existed the vacancy and will continue to exist after the vacancy is filled, like FAUSA. *See id.* And nothing in the order appointing Mr. Sarcone FAUSA and special attorney provides that the appointment ceases upon confirmation of a U.S. Attorney.

27

### D. Regardless of Mr. Sarcone's status as Acting U.S. Attorney, the subpoena should not be quashed.

Accordingly, even if Mr. Sarcone were not the Acting U.S. Attorney or authorized to exercise all the functions of a U.S. Attorney, he still would be FAUSA and authorized to obtain subpoenas. In that case, the only error would be using the wrong title on the subpoenas and accompanying cover letters. A:68-69, 72-73. That alone would not make compliance with the subpoena "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Because the grand jury "has a right to every man's evidence," this Court has held that grand-jury subpoenas must be enforced even in the face of alleged governmental misconduct when the subject of the subpoena "suffered no prejudice." *In re Grand Jury Subpoena Duces Tecum*, 1 F.3d 87, 94 (2d Cir. 1993). NYOAG suffered even less prejudice from a prosecutor's use of the wrong title.

28

## CONCLUSION

The Court should reverse.

Dated:  Syracuse, New York
        April 17, 2026

        Respectfully submitted,

        TODD BLANCHE
        *Acting Attorney General*

        HENRY C. WHITAKER
        *Counselor to the Attorney General*

        s/ *Rajit S. Dosanjh*
By:     RAJIT S. DOSANJH
        *Assistant United States Attorney*
        *United States Attorney's Office*
        *Northern District of New York*

29

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned counsel for the United States hereby certifies that this brief complies with the type volume limitation of Rule 32(a)(7)(B) and Local Rule 32.1. As measured by the word-processing system used to prepare this brief, there are approximately 6,179 words in the brief.

s/ *Rajit S. Dosanjh*

By:   RAJIT S. DOSANJH
*Assistant United States Attorney*

# CERTIFICATE OF SERVICE
# BY NEXTGEN CM/ECF

IN RE GRAND JURY SUBPOENAS TO THE
OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL
v.
UNITED STATES OF AMERICA

Docket No. 26-156

The undersigned hereby certifies that she is an employee of the Office of the United States Attorney for the Northern District of New York, and is a person of such age and discretion as to be competent to serve papers.

She further certifies that on April 17, 2026, she served a copy of the appellant's Reply Brief on the United States Court of Appeals for the Second Circuit and counsel for the appellee and *amici* by uploading to the Second Circuit's ECF system a Portable Document Format (PDF) version of the Brief.

s/ *Deanna Lieberman*
Deanna Lieberman