26-156
*In re Grand Jury Subpoenas to the Office of the New York State Attorney General*

PARK, *Circuit Judge*, dissenting:

The office of the U.S. Attorney for the Northern District of New York (N.D.N.Y.) became vacant when Carla Freedman resigned in February 2025. Five months later, the Attorney General appointed John A. Sarcone III as First Assistant U.S. Attorney ("FAUSA") for N.D.N.Y. The Federal Vacancies Reform Act ("FVRA") states that if a U.S. Attorney resigns, "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1). This makes clear that Sarcone became Acting U.S. Attorney when he was appointed as FAUSA. Nonetheless, the Attorney General took a belt-and-suspenders approach and also appointed Sarcone as Special Attorney with all powers of U.S. Attorneys under 28 U.S.C. § 515. So Sarcone had the authority to issue subpoenas both as Acting U.S. Attorney and as Special Attorney.

The majority misreads § 3345(a)(1) to apply only to the person serving as FAUSA at the moment the vacancy first arose. But the FVRA contains no such limitation to a specific person or point in time. And the majority's arguments based on statutory structure are actually policy arguments that overlook Congress's understanding that the executive branch must function during periods of transition and political stalemate. Finally, the majority concludes that Sarcone's appointment as Special Attorney violated the FVRA's exclusivity provision. But 5 U.S.C. § 3347 does not prohibit agency heads from delegating certain powers of an office to a non-acting official.

I respectfully dissent.

# I

## A

Article II of the Constitution requires the President to obtain "the Advice and Consent of the Senate" before appointing "Officers of the United States." U.S. Const. art. II § 2, cl. 2. "Given this provision, the responsibilities of an office requiring Presidential appointment and Senate confirmation—known as a 'PAS' office—may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 292 (2017). As a result, Congress has authorized the President to appoint acting officers of PAS offices since President Washington's first term.

Congress has expanded this authority over time as the executive branch has grown and confirmation timelines have lengthened. The first Vacancies Act of 1792 authorized the President to fill vacancies only in the Departments of War, Treasury, and State,[1] but in 1868, Congress broadened the authority to appoint acting officers of almost all executive offices.[2] And, by 1988, Congress lengthened the 1868 Act's term limit for acting officers from 10 to 120 days.[3]

In the 1970s, a dispute arose between the Department of Justice ("DOJ") and the Comptroller General about whether limitations on acting officers in the Vacancies Act of 1868 applied to the DOJ. The DOJ argued that the Attorney General had independent statutory

---

[1] Act of May 8, 1792, ch. 37, § 8, 1 Stat. 281.

[2] Act of July 23, 1868, ch. 227, 15 Stat. 168.

[3] *Id.*; Act of Feb. 6, 1891, ch. 113, 26 Stat. 733; Presidential Transitions Effectiveness Act, Pub. L. No. 100-398, § 7, 102 Stat. 985, 988 (1988).

authority to fill vacant offices, and it pointed to 28 U.S.C. §§ 509-510, which permit the Attorney General to exercise the duties of vacant offices and to delegate those duties to others. *See SW Gen.*, 580 U.S. at 294. Then in 1998, the Attorney General relied on her delegation authority—rather than the Vacancies Act—to "designate Bill Lann Lee to perform the functions and duties of and to act as Assistant Attorney General in charge of the Civil Rights Division" after the Senate had rejected Lee's appointment to that role. *Oversight of the Implementation of the Vacancies Act: Hearing Before the S. Comm. on Governmental Affairs*, 105th Cong. 102 (1998). In response, and after "intense negotiations," Congress passed the Federal Vacancies Reform Act. *See* Morton Rosenberg, Cong. Rsch. Serv., 98-892 A, *The New Vacancies Act: Congress Acts To Protect the Senate's Confirmation Prerogative* 9 (1998).

The FVRA expanded the President's authority to appoint acting officers and clarified the limits of that authority. First, like the Vacancies Act, § 3345 began with the default rule that "the first assistant to the office" of a departed officer would serve as acting officer, and it permitted the President to override that default rule by selecting any PAS officer to fill the vacancy. 5 U.S.C. § 3345(a)(1), (a)(2). Congress also added a new third channel to fill vacancies: the President could select a senior official from the office of the vacancy. *Id.* § 3345(a)(3). Second, § 3346 increased acting officers' terms from 120 to 210 days, with the option for an acting officer to serve indefinitely while a first or second nomination is pending. Third, § 3347 clarified that §§ 3345 and 3346 are "the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any [PAS] office," with exceptions for recess appointments and statutes that "expressly" authorize an officer to serve "in an acting capacity." Finally, § 3348 provided that if there

was no acting officer, "the office shall remain vacant," and only the agency head could perform the office's non-delegable duties.

**B**

Intensifying partisan battles over nominations have led "[a]ll recent Presidents [to] rel[y] significantly on acting officials in Senate-confirmed roles." Nina A. Mendelson, *The Permissibility of Acting Officials: May the President Work Around Senate Confirmation?*, 72 ADMIN. L. REV. 533, 538 (2020). That is particularly true at the beginning of Presidential administrations, when the prior President's appointees often resign *en masse* and the Senate can be slow to confirm new nominees.

During the first year of President Trump's second term, the Senate was especially slow to confirm U.S. Attorneys, who oversee federal prosecutions in 94 districts across the country. Senate Minority Leader Chuck Schumer put a hold on all DOJ nominees as an act of protest.[4] As a result, the Senate did not confirm any of President Trump's U.S. Attorney nominees for nine months after his inauguration; by the end of 2025, the Senate had confirmed only 31 U.S. Attorneys, leaving many positions vacant across the country.[5]

The position of U.S. Attorney for N.D.N.Y. became vacant when Carla Freedman, the U.S. Attorney appointed by President Biden, resigned on February 17, 2025, shortly after President Trump

---

[4] *See* James Fanelli, Dave Michaels, Corinne Ramey, *A New Front in Trump's Clash with the Judiciary: Appointing Prosecutors*, WALL ST. J. (July 27, 2025).

[5] *See* Press Release, U.S. S. Comm. on the Judiciary, Senate Republicans Confirm 14 Law and Order Nominees to Deliver Safer Streets for Americans (Dec. 19, 2025), https://perma.cc/Z935-N7V2.

took office. To date, there is no Senate-confirmed U.S. Attorney for N.D.N.Y.

Since February 2025, the functions of the vacant office have been performed by different people under different statutory authorizations. First, when Freedman resigned, Daniel Hanlon, the FAUSA at the time, became Acting U.S. Attorney under the FVRA's default provision, 5 U.S.C. § 3345(a)(1). Then, on February 28, 2025, Attorney General Pamela Bondi announced that she would appoint Sarcone interim U.S. Attorney for N.D.N.Y. under 28 U.S.C. § 546, which authorizes the Attorney General to appoint interim U.S. Attorneys for 120-day terms. Sarcone's appointment as interim U.S. Attorney was effective on March 17 and ended on July 14, 2025. On that day, the district court in N.D.N.Y. could "appoint a United States attorney to serve until the vacancy is filled" under § 546(d). But the district court declined to exercise its authority under § 546(d) either to allow Sarcone to continue as acting officer or to appoint a replacement.[6] The office of U.S. Attorney thus became vacant again.

On July 14, 2025, the Attorney General appointed Sarcone "Special Attorney to the United States Attorney General" and authorized him "to conduct in the Northern District of New York, any kind of legal proceedings, civil or criminal, including Grand Jury proceedings and proceedings before United States Magistrates, which United States Attorneys are authorized to conduct." App'x at 2087, 2095. The DOJ also reassigned Hanlon from FAUSA to Deputy U.S. Attorney and designated Sarcone as FAUSA. The United States

[6] Press Release, U.S. Dist. Ct. for N.D.N.Y, United States Attorney for N.D.N.Y. (July 14, 2025), https://perma.cc/XP4Z-WB8F.

asserted that Sarcone—as FAUSA to the vacant U.S. Attorney office—became Acting U.S. Attorney under 5 U.S.C. § 3345(a)(1).

On August 5, 2025, Sarcone requested that the district court issue two grand jury subpoenas to the Office of the New York State Attorney General ("OAG"), which it duly issued. OAG moved to quash the subpoenas, which the district court granted. It concluded that Sarcone lacked authority to issue the subpoenas as Acting U.S. Attorney or as Special Attorney and disqualified him from the proceedings.

## II

Sarcone was Acting U.S. Attorney under 5 U.S.C. § 3345(a)(1) when he issued the subpoenas, so the district court should not have quashed them or barred Sarcone from the OAG investigations.

### A

5 U.S.C. § 3345(a)(1) states that if a PAS officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." This language creates a "general," "default rule" that "the first assistant to a vacant office shall become the acting officer." *SW Gen.*, 580 U.S. at 293. So anytime (1) there is a vacancy, (2) there is a first assistant, and (3) the time limit in § 3346 has not elapsed, the first assistant becomes acting officer. The application here is straightforward: (1) the office of U.S. Attorney for N.D.N.Y. was vacant, (2) Sarcone was first assistant, and

(3) the time limit in § 3346 had not elapsed,[7] so Sarcone became Acting U.S. Attorney.

This should be the end of the analysis. But the majority asserts that "only the First Assistant in place when a vacancy arises may become the acting officer under § 3345(a)(1)." *Ante* at 28. This is wrong. The FVRA is clear that any first assistant to a vacant office can become acting officer under § 3345(a)(1).

Start with the text. Subsection (a)(1) states that if a PAS officer departs, then "the first assistant *to the office* of such officer" becomes acting officer. 5 U.S.C. § 3345(a)(1) (emphasis added). The words "to the office" have meaning, "as each word in a statute should." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 70 (2011). Without them, the statute would refer to "the first assistant . . . of such officer"—*i.e.*, the first assistant of the departed PAS officer. With them, the statute refers to a position—"first assistant *to the office* of such officer"—not a person. To this, the majority asserts that the difference in words between the two formulations does not make "the slightest difference semantically." *Ante* at 18. But a newly selected first assistant has the same relationship "to the office" that the incumbent did, even though he was not the first assistant to the departing officer. So the words "to the office" make clear that § 3345(a)(1) applies to any first assistant, not just the incumbent first assistant of the departing officer.

---

[7] 5 U.S.C. § 3346 states that acting officers under § 3345 can serve "for no longer than 210 days beginning on the date the vacancy occurs," subject to tolling provisions. For purposes of this appeal, it does not matter whether the 210-day clock began when Freedman resigned or when Sarcone's § 546 appointment elapsed because the subpoenas were timely issued either way.

The statutory history confirms this interpretation. The FVRA's predecessor, the Vacancies Act of 1868, stated that "[w]hen the head of an Executive agency . . . dies, resigns, or is sick or absent, *his first assistant* . . . shall perform the duties of the office." 5 U.S.C. § 3345 (1988). An early draft of the FVRA also referred to "the first assistant of such officer." S. Rep. No. 105-250, at 25 (1998). If Congress merely sought to "remove[] the male-default pronoun" as the majority implausibly suggests, *ante* at 22, this formulation would have sufficed. But Congress amended the FVRA to reference "the first assistant to the office of such officer"—not the first assistant to a specific officer. 5 U.S.C. § 3345(a)(1). "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 189 (2020) (cleaned up). Reading "the first assistant to the office" to cover all first assistants to the office gives effect to Congress's amendment.[8]

[8] The Supreme Court has warned against "allowing ambiguous legislative history to muddy clear statutory language" in the FVRA. *SW Gen.*, 580 U.S. at 307 (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011)). But to the extent the history is relevant, it tends to support this interpretation. As one of the FVRA's sponsors, Senator Thompson, explained: "The term 'first assistant to the office' is incorporated into 5 U.S.C. § 3345(a)(1), rather than 'first assistant to the officer.' This change is made to 'depersonalize' the first assistant." 144 Cong. Rec. S12822 (daily ed. Oct. 21, 1998). The majority agrees that this "change reflected a standardization throughout the statutory provision to focus on the *office* rather than the individual *officeholder*," but disregards this "office-centric language" by limiting § 3345(a)(1) to the first assistant of the departing officer. *Ante* at 22-23. Moreover, the phrase "to the office" was added after Senator Lieberman objected to the earlier draft as too restrictive because under its initial formulation "a first assistant apparently can take over only if he or she was the first assistant at the time of the vacancy." 144

The statutory structure supports this interpretation. Unlike subsection (a)(1), which imposes no limit on which "first assistant to the office" may become acting officer, subsection (a)(3) limits the pool of eligible senior agency officials to incumbents. Under subsection (a)(3), only officials who served "for not less than 90 days" "during the 365-day period preceding the date of death, resignation, or beginning of inability to serve" can be appointed. 5 U.S.C. § 3345(a)(3)(A). Section 3345(b)(1) imposes the same requirement on acting officers whom the President has nominated for Senate approval. The express incumbency requirements in § 3345(a)(3) and § 3345(b) thus suggest that Congress meant not to impose an incumbency requirement in § 3345(a)(1).[9]

Finally, the political branches have endorsed this understanding in opinion and practice. "[W]hile courts must exercise independent judgment in determining the meaning of statutory provisions, the contemporary and consistent views of a coordinate branch of government can provide evidence of the law's

Cong. Rec. S11037 (daily ed. Sept. 28, 1998). Lieberman did not "attribute[] his change of heart *entirely* to (a)(3)." *Ante* at 25 (emphasis added). When he endorsed the FVRA, he remarked that the original draft "contained a *number* of troubling provisions," and that the bill was revised to "address the concerns that remained." 144 Cong. Rec. S12861 (daily ed. Oct. 21, 1998) (emphasis added). That he highlighted the addition of (a)(3) as one of the changes he was "particularly pleased" about, *id.* does not support the majority's inference "that nothing substantively changed in (a)(1) through its amended language," *ante* at 25.

[9] Subsections 3345(a)(3) and (b)(1) also suggest that when Congress cared about incumbency, it considered 90 days of service in the year before the vacancy to be the relevant bar. The majority offers no explanation for its view that Congress conditioned § 3345(a)(1) on the more arbitrary question of who served as first assistant at the moment the PAS officer departed without regard to the duration of that service.

meaning." *Bondi v. VanDerStok*, 604 U.S. 458, 480-81 (2025) (cleaned up). Since 2001, the legislative and executive branches have agreed that "a person need not have been in the first assistant position before the vacancy occurs in order to serve as acting officer." Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO, to U.S. Senator Joseph Lieberman and U.S. Representative Dan Burton (Dec. 7, 2001) ("2001 GAO Letter"); *see also Designation of Acting Associate Attorney General*, 25 Op. O.L.C. 177, 179-80 (2001) (concluding that "subsection (a)(1) applies to someone who . . . was designated as first assistant after the vacancy occurred," in part because the opposite conclusion would render the words "to the office" in § 3345(a)(1) "meaningless").[10] Based on these interpretations, the executive branch has "routinely relied on post-vacancy first assistants to serve as acting officials under the FVRA." Reply Br. at 14-15 & n.3 (listing 31 examples from the Department of Justice in the Bush, Obama, Trump, and Biden administrations).[11]

[10] To be sure, OLC initially "believe[d] that the better understanding is that you must be the first assistant when the vacancy occurs in order to be the acting officer by virtue of being the first assistant." *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 63-64 (1999). But OLC offered no analysis to support that preliminary view, it reversed course two years later, and it has maintained for the past 25 years that post-vacancy first assistants may become acting officer under § 3345(a)(1).

[11] The majority discounts this historical practice as executive branch self-aggrandizement, saying it demonstrates only that "the Executive branch has pushed the limits of the FVRA since its enactment." *Ante* at 27. But the Government Accountability Office—the agency in the *legislative* branch tasked with reporting violations of the FVRA, *see* 5 U.S.C. § 3349—has reached the same conclusion, *see* 2001 GAO Letter. This cannot be dismissed as the self-interested interpretation of a single branch.

In short, the text of § 3345(a)(1), the FVRA's structure, and long-standing, bipartisan interpretations and practices all point in the same direction: any first assistant to a vacant office becomes acting officer under § 3345(a)(1). Sarcone was first assistant to the vacant office, and the § 3346 time limit had not elapsed, so he was Acting U.S. Attorney when he issued the subpoenas.

**B**

The majority reaches the opposite conclusion by making up an "incumbency requirement." *See ante* at 17-18. But § 3345(a)(1) never mentions incumbency, and courts should not "read into statutes words that aren't there." *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 215 (2020). The majority's interpretation also renders § 3345(a)(1) a nullity anytime a PAS officer and first assistant resign simultaneously during presidential transitions—an odd result given that the FVRA grants more latitude to the executive during times of transition. *See* 5 U.S.C. § 3349a (extending the § 3346 time limits for vacancies arising within 60 days of a new President's inauguration).

The majority's defense of its incumbency requirement is weak. First, it misreads the text. The majority contends that the phrase "dies, resigns, or is otherwise unable to perform" refers only to the moment the PAS office becomes vacant because "[t]he first two triggers—death and resignation—are instantaneous events." *Ante* at 18. The problem with this argument is that the third trigger—"is otherwise unable to perform"—describes a continuing state, not a discrete event. So the majority's interpretation of "is otherwise unable" to refer only to "the onset of the incapacity that triggered the vacancy," *id.* at 20, reads the phrase "is otherwise unable" as "becomes otherwise unable." But Congress knows how to identify the instant a vacancy arises, rather than its continuing state.

Elsewhere in § 3345, it referred to the "beginning of inability to serve of the applicable officer." 5 U.S.C. § 3345(a)(3)(A), (b)(1)(A).[12] Moreover, the text of subsection (a)(1) confirms that it operates for the duration of the vacancy, not just its opening, because "perform[ing] the functions and duties of the office" is also a continuing state.

The majority's interpretation relies on the *ejusdem generis* canon, which reads a general term at the end of a list in light of common characteristics shared by the preceding terms. It thus treats the third cause of a vacancy (is otherwise unable to perform) as an instantaneous event matching the first two (dies or resigns). *See ante* at 19-20. But the majority gives no reason why the relevant characteristic is how the incapacity is triggered rather than how long the officer is unavailable. In any event, the third cause is different because, unlike death or resignation, it describes a state that may be continuing and may or may not be permanent. "[O]ne is either dead or alive, and in a job or out of it," *id.* at 18, but an officer who is ill one week may be better the next. The majority's attempt to read timing

[12] The phrase "is otherwise unable to perform" also cannot be limited to the onset of the vacancy because it sets the endpoint for acting officers who take over "temporarily" because of sickness. The time limitations in § 3346 do not apply "in the case of a vacancy caused by sickness," 5 U.S.C. § 3346(a), and nothing in § 3346 says that an acting officer's service ends once the PAS officer recovers. Instead, the triggering language supplies this limit by tying the acting officer's term to continued incapacity. Once recovered, the PAS officer "is" no longer "unable to perform," so subsection (a)(1) ceases to apply. But under the majority's interpretation, the "statute's triggering mechanism looks to the initial onset of the vacancy rather than to the ongoing state that follows," *ante* at 20, so it cannot then displace the acting officer when an inability to perform ends. Similarly, the majority agrees that when Sarcone became interim U.S. Attorney, he "replac[ed] Hanlon as the temporary head of the office," even though the time limitations in § 3346 had not expired. *Id.* at 8.

into "is otherwise unable" fails because *ejusdem generis* cannot override the plain meaning of the text. *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588 (1980) ("[*E*]*jusdem generis* . . . is only an instrumentality for ascertaining the correct meaning of words when there is uncertainty." (cleaned up)); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227 (2008) ("[W]e do not woodenly apply limiting principles every time Congress includes a specific example along with a general phrase.").

Second, the majority's interpretation gives the same words in the same Act different meanings. The phrase "dies, resigns, or is otherwise unable to perform the functions and duties of the office," governs not only § 3345(a)(1), but also § 3345(a)(2) and (a)(3). If that phrase limited when first assistants could become acting officer under (a)(1), it would also limit when a President could select an acting officer under (a)(2) and (a)(3). But a President can select acting officers under (a)(2) and (a)(3) anytime during a vacancy. *See SW Gen.*, 580 U.S. at 309.

To be sure, (a)(1) uses the mandatory "shall" to describe the consequence of a vacancy while (a)(2) and (a)(3) use the permissive "may." *Ante* at 21. But "shall" does not have the temporal significance the majority assigns it. The same language ("dies, resigns, or is otherwise unable to perform") also appears in § 3348(b) followed by the word "shall," without imposing any time limit. *See* 5 U.S.C. § 3348(b)(1) (stating that if no acting officer is serving, and a PAS officer "dies, resigns, or is otherwise unable to perform," "the office shall remain vacant"). If the majority were correct that the word "shall" "signals an automatic result occurring instantaneously with the trigger," then § 3348(b) would be unintelligible. *Ante* at 21. An office does not "remain" vacant in an instant. The majority's conclusion—that "dies, resigns, or is otherwise unable to perform"

temporally limits subsection (a)(1) to the moment of the PAS officer's departure—does not make sense because those words do not similarly limit any of the other three provisions in which they appear.

Third, the majority relies on a non-sequitur. It jumps from the premise that the phrase "dies, resigns, or is otherwise unable to perform" limits *when* a first assistant can become acting officer to a conclusion about *which* first assistant can become acting officer—*i.e.*, only an incumbent first assistant. But a time limit is different from an incumbency requirement, so the former cannot create the latter. To illustrate this point, consider the implication of the majority's argument if Hanlon—the incumbent FAUSA when Freedman resigned—had remained FAUSA on July 14, 2025, when Sarcone's interim appointment under § 546 elapsed. If the majority were correct that § 3345(a)(1) operates only at the moment of the PAS officer's departure, then it would have operated only on February 17, when Freedman resigned, so Hanlon would not have become Acting U.S. Attorney on July 14, even though he was the incumbent FAUSA. But this would make little sense and OAG conceded at oral argument that Hanlon would become Acting U.S. Attorney in this hypothetical. Oral Arg. Tr. at 29-31. The majority's reading of the statute is thus internally inconsistent—in some places, it says the automatic-succession provision is limited to a person (the incumbent FAUSA), but elsewhere, to a point in time (when the vacancy arises).

Turning to structure, the majority argues that if the President can select someone to become first assistant, and thus acting officer under subsection (a)(1), then he can sidestep (a)(2) and (a)(3) altogether. But "[l]anguage in a statute is not rendered superfluous merely because in some contexts that language may not be pertinent." *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981). Although in this context a President could effectively select an Acting U.S. Attorney

under subsection (a)(1) by appointing the FAUSA, the FVRA applies to a wide range of PAS offices, and for others, the President must rely on (a)(2) or (a)(3) to select the acting officer. First, the first assistant to an agency head is often itself a PAS position.[13] Congress knew this was common when it passed the FVRA. *See* 5 U.S.C. § 3345(b)(2)(B) (referencing when "the office of such first assistant is an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate"). For these positions, the President cannot choose the first assistant who becomes acting officer under (a)(1). Second, the President must rely on (a)(2) and (a)(3) to select an acting officer when the PAS office lacks

[13] *See, e.g.*, 28 U.S.C. §§ 504, 508(a) (Department of Justice); 22 U.S.C. § 2651a(a)(2) (Department of State); 31 U.S.C. § 301(c) (Department of the Treasury); 10 U.S.C. § 132 (Department of Defense); 6 U.S.C. § 113(a)(1)(A) (Department of Homeland Security); 7 U.S.C. §§ 2210, 2211 (Department of Agriculture); 49 U.S.C. § 102 (Department of Transportation); 43 U.S.C. § 1452 (Department of the Interior); 29 U.S.C. § 552 (Department of Labor); 20 U.S.C. § 3412 (Department of Education); 42 U.S.C. § 7132 (Department of Energy); 31 U.S.C. § 502(b) (Office of Management and Budget); 10 U.S.C. § 7015 (Department of the Army); 10 U.S.C. § 8015 (Department of the Navy); 10 U.S.C. § 9015 (Department of the Air Force); 42 U.S.C. § 3533 (Department of Housing and Urban Development); 22 U.S.C. § 287(b) (United Nations Representative); 51 U.S.C. § 20111(b) (National Aeronautics and Space Administration); 5 U.S.C. § 1102(b) (Office of Personnel Management); 50 U.S.C. § 3026 (Office of the Director for National Intelligence); 15 U.S.C. § 633(b)(1) (Small Business Administration); 42 U.S.C. § 902(b) (Social Security Administration).

a designated first assistant[14] and when the first assistant must be chosen by the PAS officer.[15]

So the plain-text reading of (a)(1)—that any first assistant performs the functions and duties of the vacant office—does not create superfluity. Instead, it allows the President to use (a)(1) to fill vacancies where he may freely select the first assistant but requires him to use (a)(2) or (a)(3) to fill vacancies otherwise. There is nothing "anomalous" about Congress limiting who the President can choose to be Acting Attorney General or Acting Secretary of State, but letting him select an Acting U.S. Attorney under (a)(1). *Ante* at 17.[16] So

---

[14] *See* S. Rep. No. 105-250, at 12 (explaining that "[c]ertain officers have first assistants designated by statute" and "[o]ther departments and agencies have established first assistants by regulation," but cases remain where "there is no first assistant"). After the FVRA passed, several agencies designated first assistants to their PAS offices. *E.g.*, Organization of the Department of Justice, 64 Fed. Reg. 6526 (Feb. 10, 1999); Agency Organization: Vacancy, Disability, and Absence, 64 Fed. Reg. 62122 (Nov. 16, 1999) (Department of the Treasury); Organization and Delegation of Duties, 78 Fed. Reg. 23158, 23160 (Apr. 18, 2013) (Department of Transportation).

[15] *E.g.*, 12 U.S.C. § 5491(b)(5) (Bureau of Consumer Financial Protection); 44 U.S.C. § 2103(c) (National Archives and Records Administration).

[16] The majority's charge that this interpretation would "impose essentially no limits on Executive discretion" is overblown. *Ante* at 17. The FVRA limits how long an acting official may serve under (a)(1), 5 U.S.C. §§ 3345(a)(1), 3346; it limits when a person who has been nominated for a vacant PAS office may perform the duties of that office in an acting capacity, *id.* § 3345(b)(1); and Congress has separately limited the President's ability to pick first assistants for certain offices, *see supra* at 15 & n.13. These are the limits Congress specified. During transitions, when joint resignations of PAS officers and their first assistants are commonplace, relying on subsections (a)(2) and (a)(3) might require the President to fill vacancies

even if (a)(1) sometimes renders (a)(2) and (a)(3) inapplicable, that does not justify adopting an atextual reading of (a)(1). *Cf. Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 457 (2007) ("The 'loophole,' in our judgment, is properly left for Congress to consider, and to close if it finds such action warranted.").

The majority's remaining structural arguments are grounded in policy and its conception of the statute's "internal logic" and "incentives." *Ante* at 15-16. It infers that "Congress made (a)(1) automatic precisely because it requires no fresh exercise of judgment." *Id.* at 15. That does not follow. Congress could have made subsection (a)(1) automatic simply to ensure that the duties of a PAS office do not "go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement." *SW Gen.*, 580 U.S. at 292. Automaticity does not support the majority's inference because (a)(1) operates automatically under either reading. The majority's view that Congress intended to remove the President's discretion to install acting officials under (a)(1) comes instead from its own view that Congress wanted "to stop the Executive from skirting the Vacancies Act." *Ante* at 16. "But no legislation pursues its purposes at all costs." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). And the majority's account that the FVRA was aimed to protect the Senate's constitutional role by restricting the President's ability to fill vacancies is oversimplified and self-serving. The FVRA was "a compromise measure," *SW Gen.*, 580 U.S. at 307, that

---

with holdovers from prior administrations or career officials. It makes sense that for some offices, Congress meant to give the President leeway to choose someone he trusts to serve in a temporary acting capacity. *See Trump v. Slaughter*, 609 U.S. ----, 146 S. Ct. 2283, 2310 (2026) ("To discharge the duties of his trust, the President must have the assistance of officers he can trust." (cleaned up)).

expanded the President's authority to select acting officers, including by allowing the President to select senior agency officials and by increasing acting officers' terms from 120 to 210 days. The FVRA is thus a good example of why the Supreme Court has "repeatedly" warned that "the text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) (collecting cases).

In sum, the FVRA's text, structure, and purpose rebut the majority's conclusion that only the incumbent first assistant when a vacancy first arises can become acting officer under 5 U.S.C. § 3345(a)(1). The better reading of the statute is that *any* first assistant to a vacant office becomes acting officer, subject only to the time limits in § 3346.

**III**

The subpoenas were also valid because Sarcone had authority to issue them as Special Attorney.

**A**

Congress has authorized the Attorney General to exercise all powers of U.S. Attorneys and to delegate those powers to others, through several reinforcing statutes. The Attorney General is the "head of the Department of Justice," 28 U.S.C. § 503, vested with virtually "[a]ll functions of other officers of the Department of Justice," *id.* § 509. She has authority to "make [appropriate] provisions . . . authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." *Id.* § 510. She may "conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings . . . , which United States attorneys are authorized by law to conduct,"

and "specially appoint[]" other attorneys to conduct those proceedings. *Id.* § 515(a). She also may "direct[]" "the conduct of litigation in which the United States . . . is interested," *id.* § 516; "sen[d]" "any officer of the Department of Justice . . . to attend to the interests of the United States in a suit," *id.* § 517; and personally or by delegation "conduct and argue any case in a court of the United States in which the United States is interested," *id.* § 518(b).

These statutory authorizations are essential for the Attorney General to exercise her "broad power to enforce the criminal laws of the United States." *In re Persico*, 522 F.2d 41, 55 (2d Cir. 1975). The Attorney General has long relied on these provisions to delegate prosecutorial authority to others. *See, e.g.*, *id.* at 45 (describing the appointment of a Special Attorney to a "Strike Force" against organized crime); *see also United States v. Wrigley*, 520 F.2d 362, 370 (8th Cir. 1975) ("[U]ntil Congress imposes limitations on the power of the Attorney General, we must accept his right to authorize, absent a violation of the Constitution, special attorneys to conduct any criminal proceeding in a designated judicial district which United States Attorneys are authorized to conduct.").

Here, Attorney General Bondi relied on these statutes to appoint Sarcone as Special Attorney and to authorize him to conduct "any kind of legal proceedings, civil or criminal, including Grand Jury proceedings . . . which United States Attorneys are authorized to conduct." App'x at 2087, 2095. This delegation authorized Sarcone to issue the subpoenas.[17]

---

[17] Even if Sarcone did not become Acting U.S. Attorney, the fact that he signed the subpoenas with the title "Acting U.S. Attorney" would not undermine his authority to issue the subpoenas as Special Attorney because

**B**

The majority concludes that this delegation was invalid under the FVRA's exclusivity provision, which prohibits the Attorney General from relying on delegation statutes to appoint "an acting official." 5 U.S.C. § 3347. But this is incorrect because § 3347 does not prohibit agency heads from delegating the delegable powers of a PAS office to a non-acting official, as the Attorney General did here.

Section 3347 covers actions that "temporarily *authoriz[e] an acting official* to perform the functions and duties" of a PAS office. 5 U.S.C. § 3347(a) (emphasis added). It thus ensures that the executive must follow the FVRA when it names acting officers and conveys *all* authorities of a PAS office to them. But when the executive has delegated only the delegable authorities of the PAS office, it has not "authoriz[ed] *an acting official* to perform the functions and duties" of a PAS office under § 3347.

The structure of the FVRA supports this conclusion. Section 3348(b) states that when a PAS office is vacant, "only the head of such Executive agency may perform" the duties of the office that are "required by statute to be performed by the applicable officer," *i.e.*, non-delegable duties. *Id.* § 3348(a)(2)(A), (b). By requiring agency heads to perform a vacant office's *non-delegable* duties, § 3348(b) contemplates that non-acting officers can perform the *delegable* duties of the vacant office. The majority's assertion that this would "render the FVRA a dead letter," *ante* at 31, is wrong because the executive must still follow the FVRA to select an officer to perform the non-delegable duties of the vacant office.

---

it would not make an otherwise-valid subpoena "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Interpreting § 3347 to permit delegations that do not create an acting officer is also consistent with the FVRA's history. One of the reasons Congress enacted the FVRA was to address the Attorney General's reliance on 28 U.S.C. §§ 509, 510 to appoint acting officials, as she did in "designat[ing] Bill Lann Lee to perform the functions and duties of and *to act as Assistant Attorney General in charge of the Civil Rights Division*." *Oversight of the Implementation of the Vacancies Act: Hearing Before the S. Comm. on Governmental Affairs*, 105th Cong. 102 (1998) (emphasis added).[18] Section 3347 prohibits that practice, but it does not go further to prohibit delegations of authority to non-acting officials.

Finally, other courts and the political branches have embraced this interpretation. In *Schaghticoke Tribal Nation v. Kempthorne*, 587 F.3d 132 (2d Cir. 2009), we held that the FVRA did not prohibit the Secretary of the Interior from delegating the duty of the vacant office of Assistant Secretary—Indian Affairs "to make Indian acknowledgment decisions" because that duty was not "required by statute or regulation to be performed by the Assistant Secretary." *Id.* at 135 (cleaned up). And the Federal Circuit agrees that "[t]he plain language of the statute limits the scope of the FVRA to non-delegable functions and duties." *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1338 (Fed. Cir. 2022).[19] The GAO and OLC also agree that the

---

[18] Although the appointment of Bill Lann Lee was controversial, DOJ had made appointments like this routinely before the FVRA. *See Oversight of the Implementation of the Vacancies Act: Hearing Before the S. Comm. on Governmental Affairs*, 105th Cong. 101-06 (1998) (Appendix I).

[19] The majority faults the Federal Circuit for using § 3348 to interpret § 3347. But when interpreting statutes, "our task is to fit, if possible, all parts into an harmonious whole." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012) (quoting *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959)).

FVRA permits non-acting officers to exercise the delegable duties of a vacant PAS office. *See* Letter from Gary L. Kepplinger, General Counsel, GAO, to U.S. Senators Richard J. Durbin, Russell D. Feingold, and Edward M. Kennedy (June 13, 2008) (concluding that the FVRA did not prohibit the Principal Deputy Assistant Attorney General from performing the duties of the vacant office of Assistant Attorney General for OLC); 23 Op. O.L.C. at 72 ("[T]he Act permits non-exclusive responsibilities to be delegated to other appropriate officers and employees in the agency."). The majority's reading thus disregards the uniform interpretation of both the executive branch and the component of the legislative branch charged with monitoring FVRA compliance. *See supra* at 10 & n.11. And the Senate Report for the bill confirms that Congress understood that the "[d]elegable functions of the [vacant] office could still be performed by other officers or employees" under the FVRA. S. Rep. No. 105-250, at 18; *see ante* at 25-26 (noting that "the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill" (quoting *Garcia v. United States*, 469 U.S. 70, 76 (1984)).

The FVRA's text, structure, and history, and the practices and interpretations of the political branches all support the government's understanding that § 3347 permits non-acting officers to exercise the delegable duties of a vacant office. Section 3347 thus permitted the Attorney General to appoint Sarcone Special Attorney and to delegate to him the powers of U.S. Attorneys.

---

By interpreting § 3347 to prohibit delegations that § 3348 contemplates, the majority needlessly reads discord into a coherent scheme.

### C

The majority misreads § 3347 to prohibit the Attorney General from installing a "de facto" Acting U.S. Attorney through delegations, which is how it describes Sarcone's appointment.

There are two problems with this interpretation. First, its premise—that comprehensive delegations are equivalent to acting officer appointments—is mistaken. An acting officer is different from a delegee. Unlike acting officers, delegees cannot exercise non-delegable duties and are limited by the scope of their delegation. That difference remains even when the executive purports to delegate all authorities of a PAS office because unlike an acting officer, a delegee's actions may be subject to factual or legal challenge.[20] And for PAS offices with non-delegable authorities, *see* 5 U.S.C. § 3348(a)(2) (referencing such offices), the recipient of a broad delegation necessarily has less authority than an acting officer, so a broad delegation is not the same as an acting officer appointment.

Second, the majority's interpretation is atextual. The FVRA does not use the words "de facto" acting officer. Although the majority says the inquiry is "whether a person's delegation is so comprehensive that he functionally occupies the vacant PAS office," it fails to explain what that means. *Ante* at 34. Would Sarcone be "de facto" Acting U.S. Attorney if he had all delegated powers of U.S. Attorneys, but did not lead the office as FAUSA? What if he were given the same delegation, but a handful of cases were carved out

---

[20] Sarcone has faced precisely these challenges. *See Matter of Ord. to Authorize Disclosure of Tax Returns*, No. 25-Misc.-22, 2026 WL 63331, at *3 (N.D.N.Y. Jan. 8, 2026) (concluding that Sarcone could not be delegated the power to authorize an application for the Internal Revenue Service to disclose tax return information under 26 U.S.C. § 6103(i)).

from it? The majority's substitution of the statutory language with its own "de facto" officer test is ungrounded and unhelpful.

**IV**

Mr. Sarcone had the authority to subpoena OAG both as Acting U.S. Attorney under 5 U.S.C. § 3345(a)(1) and also as Special Attorney. By concluding otherwise, the majority imposes new limits on executive authority, upsetting the balance that Congress struck in the FVRA. I respectfully dissent.