**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
**Thurgood Marshall U.S. Courthouse 40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 26-156

Caption [use short title]: In Re Grand Jury Subpoenas to the Office of the New York State Attorney General.

**Motion for:** Stay of the mandate and district court's disqualification order.

Set forth below precise, complete statement of relief sought:

Motion to stay the mandate of this Court and the district court's order disqualifying John A. Sarcone III, pending petition for certiorari

**MOVING PARTY:** United States of America

☐ Plaintiff ☐ Defendant
☑ Appellant/Petitioner ☐ Appellee/Respondent

**OPPOSING PARTY:** Office of the N.Y.S. Attorney General

**MOVING ATTORNEY:** Rajit S. Dosanjh, AUSA

**OPPOSING ATTORNEY:** Hailyn J. Chen, Esq.

[name of attorney, with firm, address, phone number and e-mail]

| Moving Attorney | Opposing Attorney |
|---|---|
| 100 South Clinton Street, Syracuse, NY 13261 | 350 South Grand Ave., 50th Fl, Los Angeles, CA 90071 |
| Tele: 315-448-0672 | Tele: 213-683-9548 |
| Email: Rajit.S.Dosanjh@usdoj.gov | Email: hailyn.chen@mto.com |

Court-Judge/Agency appealed from: District Judge Lorna G. Schofield (N.D.N.Y., by designation)

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain):

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know

Does opposing counsel intend to file a response:
☑ Yes ☐ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this Court? ☐ Yes ☐ No
Requested return date and explanation of emergency:

Is oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☐ Yes ☑ No If yes, enter date:

**Signature of Moving Attorney:** s/ Rajit S. Dosanjh **Date:** 8/28/2026 Service by: ☑ CM/ECF ☐ Other [Attach proof of service]

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

IN RE GRAND JURY SUBPOENAS TO THE OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL.

OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL,

Petitioner-Appellee,

v.

UNITED STATES OF AMERICA,

Respondent-Appellant.

Case No. 26-156

**MOTION TO STAY THE MANDATE AND THE DISTRICT COURT'S DISQUALIFICATION ORDER PENDING PETITION FOR CERTIORARI**

Pursuant to Federal Rule of Appellate Procedure 41(d), the United States respectfully moves this Court for an order staying the mandate in this case pending its filing of a petition for a writ of certiorari in the United States Supreme Court and any further proceedings in the Supreme Court. *See* Fed. R. App. P. 41(d)(2)(B)(i)-(ii). The United States further moves this Court for an order staying the disqualification ordered issued by the United States District Court for the Northern District of New York (Schofield, *S.J.*, sitting by designation). *See In re Grand Jury Subpoenas to the Off. of New York State Att'y Gen.*, 814 F. Supp. 3d 284, 300-301 (N.D.N.Y. 2026). Petitioner-Appellee, the Office of the New York State Attorney General (NYOAG), opposes the requested relief.

# I. BACKGROUND

On August 19, 2025, NYOAG moved to quash two grand jury subpoenas obtained by John A. Sarcone III, in his capacity as the Acting United States Attorney for the Northern District of New York. NYOAG contended, *inter alia*, that the subpoenas were invalid because Sarcone was not lawfully serving as Acting U.S. Attorney when he obtained them. The district court agreed, concluding that Mr. Sarcone was ineligible to serve as Acting U.S. Attorney under the automatic succession provision of the Federal Vacancies Reform Act of 1998 (FVRA), 5 U.S.C. §3345(a)(1), because he was not the First Assistant United States Attorney (FAUSA) when the previous U.S. Attorney resigned. *In re Grand Jury Subpoenas*, 814 F. Supp. 3d at 294-97. The district court also determined that Mr. Sarcone could not obtain the subpoenas through his delegated authority as a special attorney and designation as FAUSA because that delegation was overbroad and constituted an effort to create a de facto U.S. Attorney, in violation of the FVRA's exclusivity provision, 5 U.S.C. §3347. *Id.* at 297-98. On this basis, the district court invalidated the subpoenas under Fed. R. Crim. P. 17. *Id.* at 299-300. In addition, the district court disqualified Mr. Sarcone from any further involvement in the investigations that prompted the subpoenas. *Id.* at 300-301.

The district court denied the United States's motion for a stay pending appeal. *See In re Grand Jury Subpoenas to the Off. of New York State Att'y Gen.*, No. 25 MISC. 19 (LGS), 2026 WL 686046, at *1 (N.D.N.Y. Mar. 11, 2026).

On August 21, 2026, a divided panel of this Court affirmed the district court's decision quashing the subpoenas and disqualifying Mr. Sarcone. *See In re Grand Jury Subpoenas to the Off. of the New York State Att'y Gen.*, No. 26-156, --- F.4th ---, 2026 WL 2450485 (2d Cir. Aug. 21, 2026). The Court held that Section 3345(a)(1) of the FVRA, which provides that "the first assistant" to a vacant office requiring Presidential nomination and Senate confirmation "shall perform the functions and duties of the office temporarily in an acting capacity," 5 U.S.C. § 3345(a)(1), applies only to a first assistant who held that position at the time the vacancy arose, 2026 WL 2450485, at *5. The Court also held that the FVRA's exclusivity provision, 5 U.S.C. § 3347, prohibits the Attorney General from delegating all of the functions and duties of a vacant office to a single person, 2026 WL 2450485, at *15. The Court further held that the district court did not abuse its discretion by quashing the subpoenas based on Mr. Sarcone's lack of authority to obtain them. *Id*. at **15-16. And the Court affirmed the

district court's disqualification of Mr. Sarcone, finding that the United States had failed to preserve a separate challenge to that order.[1] *Id*. at *16.

The dissent disagreed with the panel majority's reading of the FVRA's automatic succession and exclusivity provisions, and concluded that Mr. Sarcone had valid authority to obtain the grand jury subpoenas—in his role as Acting U.S. Attorney and in the exercise of delegated authority as special attorney and FAUSA. *Id*. at **17-26 (Park, *J.*, dissenting).

Although the time to file a petition for rehearing does not expire until October 5, 2026, *see* Fed. R. App. P. 40(d)(1)(A), the United States has determined that it will not seek rehearing *en banc* in this Court, in order to seek review expeditiously in the Supreme Court. To that end, the Solicitor General has authorized the filing of a petition for a writ of certiorari in this case, which would be due on November 19, 2026. *See* Sup. Ct. R. 13.1. The United States, however, will file its petition in this case no later than October 5, 2026, and likely well before that date.

---

[1] The United States's challenge to the disqualification order was based on its arguments that Mr. Sarcone was validly serving as Acting U.S. Attorney and FAUSA. Obviously, if those arguments had prevailed, the disqualification order would have been without legal justification and void. *See In re Grand Jury Subpoenas*, 2026 WL 2450485, at *5 (noting that the government would obtain "effectual relief" from the disqualification order by prevailing on appeal).

The Solicitor General also has authorized the filing of a petition for certiorari from the Ninth Circuit's decision in *United States v. Jackson*, No. 24-6465, 2026 WL 2387099 (9th Cir. Aug. 17, 2026), which concerns identical issues under the FVRA. In that case, too, the United States will file its petition no later than October 5, 2026, and likely well before that date. That timing would, in the ordinary course, permit the Supreme Court to resolve the case in its October 2026 Term.

The Ninth Circuit recently granted the United States's motion to stay the mandate in *Jackson*. *See* Case No. 24-6465 (9th Cir.), Dkt. No. 63.1. The United States requests the same relief here. It further requests a stay of the disqualification order, to minimize disruption to the functioning of the U.S. Attorney's Office for the Northern District of New York while the United States seeks Supreme Court review of the important issues raised in this case.

## II. ARGUMENT

### A. A Stay of the Mandate Is Warranted.

Federal Rule of Appellate Procedure 41(d) provides that "[a] party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court." Fed. R. App. P. 41(d)(1). A movant "must show that the petition would present a substantial question and that there is good cause for a stay." *Id.* A stay generally may not exceed 90 days (the time for seeking certiorari), but may be extended if the party notifies the court that "the time for

filing a petition has been extended, in which case the stay continues for the extended period," or that "the petition has been filed, in which case the stay continues until the Supreme Court's final disposition." Fed. R. App. P. 41(d)(2)(B)(i)-(ii).

### 1. The petition for certiorari will present a substantial question.

This case concerns the separation of powers, the scope of the FVRA, and the Attorney General's authority to delegate his authority to supervise criminal prosecutions and civil litigation on behalf of the United States—all of which constitute substantial questions warranting a stay.

The Supreme Court has acknowledged the importance of reviewing "rulings that have a significant future effect on the conduct of public officials … and the policies of the government units to which they belong." *Camreta v. Greene*, 563 U.S. 692, 704 (2011). And a court decision "dictat[ing] to the executive branch whom it can appoint to serve as its prosecutors" triggers "weighty separation of powers concerns," *United States v. Silva-Rosa*, 275 F.3d 18, 22 (1st Cir. 2001), because "prosecutorial decisionmaking is the special province of the Executive Branch," *Trump v. United States*, 603 U.S. 593, 620 (2024) (cleaned up). *See In re The City of New York*, 607 F.3d 923, 947 (2d Cir. 2010) (noting that "control of criminal investigations is the prerogative of the executive branch, subject to judicial intervention only to protect rights")

(quotations omitted); *United States v. Williams*, 68 F.4th 564, 570 (9th Cir. 2023) (explaining that "special solicitude" is "owed to Executive branch prerogatives under the separation of powers") (quotations omitted); *United States v. Bolden*, 353 F.3d 870, 879 (10th Cir. 2003) (emphasizing that "disqualifying government attorneys implicates separation of powers issues"); *United States v. Whittaker*, 268 F.3d 185, 192 (3d Cir. 2001) ("[T]he issue of whether the United States Attorney in the district of the prosecution may represent the United States surely is important").

In addition, the Court's decision deepens a circuit split over the interpretation of the FVRA. As noted, the Court held that the exclusivity provision in Section 3347 of the FVRA bars the Attorney General from delegating all of the functions and duties of a vacant office to a single person. *In re Grand Jury Subpoenas*, 2026 WL 2450485, at *15. The Ninth and Third Circuits have reached the same conclusion. *Jackson*, 2026 WL 2387099, **12-13; *United States v. Giraud*, 160 F.4th 390, 402-05 (3d Cir. 2025). As this Court acknowledged, however, the Federal Circuit has held that the FVRA does *not* bar the wholesale delegation of all of an office's delegable powers to a non-acting official. *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022). This Court expressly declined to adopt the Federal Circuit's reasoning in *Arthrex* that the FVRA's exclusivity provision was limited to non-delegable

functions and duties. *See In re Grand Jury Subpoenas*, 2026 WL 2450485, at *14; *see also Jackson*, 2026 WL 2387099, at *13 (likewise declining to follow *Arthrex*); *Giraud*, 160 F.4th at 405 (expressly splitting with *Arthrex*). The Court's decision thus conflicts with *Arthrex*, providing a substantial basis for seeking certiorari. *See* Sup. Ct. R. 10(a).

The Court's decision also disrupts settled executive practice. As the United States explained in its briefing, it has been the Executive Branch's practice for years to temporarily fill vacancies by appointing new first assistants at the start of a new administration, and both the Office of Legal Counsel (OLC) and the Government Accountability Office (GAO) share the view that Section 3345(a)(1) applies to non-incumbent first assistants. *See* U.S. Opening Br. 27-28, 40-43; Reply Br. 14-16 & n.3. The same is true of the use of the Attorney General's delegation authority to provide for the temporary performance of the functions of Senate-confirmed offices if the FVRA is not available. *See* U.S. Opening Br., 39-42 (discussing GAO approval). While the Court accorded this practice no weight in reaching its legal conclusion, *see In re Grand Jury Subpoenas*, 2026 WL 2450485, at *11, it did not dispute that its ruling would upset the Executive Branch's use of these mechanisms to ensure the continued functioning of executive agencies in the event of vacancies, *id*. (noting potential for "hard … consequences" for Executive Branch) (quotations omitted). The

disruption of this important and settled practice further illustrates that this case presents a substantial question.

**2. Good cause exists to stay the mandate.**

The Court's decision disqualifying Mr. Sarcone in his position as FAUSA has significant implications for the enforcement of federal law in the Northern District of New York. That decision portends serious disruption of the usual executive chain of command over the U.S. Attorney's office.

Such disruption is a serious and irreparable injury. *See Williams*, 68 F.4th at 570 (recognizing that "the effect of any attorney disqualification order is fairly irreversible because it materially change[s] the party's position" and "[a]fter a final judgment, it will be too late … to undo any improper encroachment on the Executive branch's prosecutorial prerogatives") (quotations omitted); *cf. Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *3 (D.C. Cir. Mar. 10, 2025) (finding irreparable harm sufficient to support stay pending appeal where district court directed President "to recognize and work with an agency head whom he has already removed") (internal quotation marks omitted). Because the Court's decision will materially affect the supervision of civil and criminal matters in the Northern District of New York, a stay is warranted to prevent irreparable harm while the United States promptly seeks Supreme Court review.

### B. A Stay of the Disqualification Order is Also Warranted.

In addition to a stay of the mandate, the United States requests that the Court stay the district court's order disqualifying Mr. Sarcone from participating in the underlying investigations—pending the filing and disposition of the United States's planned petition for certiorari. To obtain a stay of the disqualification order, the United States must show a likelihood of success on the merits, including a reasonable probability that the Supreme Court will grant certiorari, a likelihood of irreparable harm in the absence of a stay, and that the balance of equities favors a stay. *See Nken v. Holder*, 556 U.S. 418, 425–26 (2009) (standard for stay pending appeal); *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (standard for stay pending disposition of petition for certiorari). This Court has made clear that a party seeking a stay may satisfy the first factor—likelihood of success on the merits—by showing that there are 'serious questions' going to the merits of the dispute and that the balance of hardships tips "decidedly" in its favor. *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-37 & n.7 (2d Cir. 2010). As then-District Judge Nathan explained, applying the "serious questions" standard is particularly appropriate where a stay is requested from a court that already has determined that the applicant failed to succeed on the merits of the underlying legal question. *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2014 WL 4247744, at *2

(S.D.N.Y. Aug. 27, 2014). For the reasons that follow, a stay of the district court's disqualification order is warranted here.

**1. This case raises serious questions warranting a stay.**

Obviously, the Court has rejected the United States's arguments on appeal, and so is unlikely to be persuaded that its own decision is likely to be overturned by the Supreme Court. Nevertheless, it is beyond dispute that this case raises "serious questions." *See, e.g.*, Order, *United States v. Garcia*, Case No. 2:25-cr-230, Dkt. No. 52, at 2 (D. Nev. Oct. 23, 2025) (hereinafter "*Garcia* Stay Order") (granting stay of order disqualifying Acting U.S. Attorney and noting that case "present[ed] important questions of when and how the President or Attorney General can fill a vacancy in a U.S. Attorney position on an acting basis").

The issues raised here are not only important, but highly contested. The United States's arguments in favor of its interpretation of the FVRA and the validity of Mr. Sarcone's authority are substantial, even if they did not prevail in this Court. The panel majority rejected those arguments over a strenuous dissent, which disputed each of the majority's legal conclusions. *In re Grand Jury Subpoenas*, 2026 WL 2450485, at **17-26. Moreover, as discussed above, the question of whether the FVRA's exclusivity provision, 5 U.S.C. §3347, prohibits the delegation of all the functions and duties of a vacant office to a single person

has given rise to a Circuit split. Likewise, as noted earlier, the Court's interpretation of the FVRA conflicts with the views of GAO—the arm of Congress charged with enforcing the FVRA. *Id.* at **20 & n.11, 25 (Park, *J.*, dissenting) (noting conflict with GAO interpretation of FVRA). In short, this case involves significant legal issues over which the panel, the Courts of Appeal, and coequal branches of government are divided. And, for the reasons already discussed, there is a reasonable probability that the Supreme Court will grant certiorari, given the substantial separation-of-powers concerns at issue here and the existence of a Circuit split on the application of the FVRA's exclusivity provision. The first prong of the "serious questions" test is satisfied.

**2. The balance of hardships tips decidedly in favor of a stay.**

The "balance of hardships" here tips "decidedly" in favor of staying the district court's disqualification order. The United States will face irreparable harm absent a stay of the order, while NYOAG will not suffer any cognizable injury if the stay is granted. As discussed, the improper disruption of the executive chain of command is a serious and irreparable injury. *See Williams*, 68 F.4th at 570 (finding irreparable harm from order disqualifying federal prosecutor). As the district court in *Garcia* explained when granting a stay of its disqualification order:

> The Court's earlier decision disqualifies an Acting U.S. Attorney, appointed by the Attorney General, from

> supervising prosecutions initiated by the Executive Branch. While the Court is fully persuaded that its decision is correct as a matter of law, the decision nonetheless intrudes on Executive Branch prerogatives. If the Court's decision is not correct, such an intrusion is improper. Given the solemn respect our separate branches of government should have for each other, the mere possibility of an improper intrusion is sufficient in the Court's view to satisfy the irreparable harm prong of the stay inquiry. And a separation-of-powers harm is great enough to offset the lower showing made by the government on the first prong – serious questions rather than a likelihood of success on the merits.

*Garcia* Stay Order at 3.

The harm caused by the disqualification order is irreparable. Just as it is "impossible to unwind the days during which a President is directed to recognize and work with an agency head whom he has already removed," *Dellinger*, 2025 WL 887518, at *3 (cleaned up), so, too, is it impossible to unwind the days in which Mr. Sarcone—whom the Executive chose to run the U.S. Attorney's Office—has been prevented from overseeing the investigation of NYOAG. And the harm goes beyond that investigation. In recent months, and after this matter was argued and submitted to the Court, criminal defendants represented by the Federal Public Defender's Office for the Northern District of New York have filed motions to disqualify Mr. Sarcone from involvement in their cases, based on the district court's disqualification order in this case. *See United States v. Guillen*, N.D.N.Y. Case No. 26-cr-226, Dkt. No. 40 (filed July 30, 2026); *United*

*States v. Dunlap*, N.D.N.Y. Case No. 25-cr-302, Dkt. No. 38 (filed Aug. 5, 2026).[2] In both motions, defendants argue that the disqualification order regarding the NYOAG investigation is "equally applicable" to their cases. *See* Dkt. No. 40, at 15; Dkt. No. 38, at 13. The defendants filed these motions only after their requests for more lenient treatment were rejected by the U.S. Attorney's Office. *See* Dkt. No. 40, at 8-9; Dkt. No. 38, at 8. These motions thus represent a clear effort to use the district court's disqualification order to intrude on the independent exercise of prosecutorial discretion, one of the key prerogatives of the Executive branch. And more such motions are likely to be filed while the United States seeks review of this Court's decision in the Supreme Court, requiring the U.S. Attorney to spend additional resources in answering them. Staying the disqualification order here would discourage the filing of more disqualification motions and support the United States's requests to stay such proceedings to prevent further disruption to the functioning of the U.S. Attorney's Office.[3]

---

[2] These motions, like the motion in this case, have been assigned to the Honorable Lorna G. Schofield of the United States District Court for the Southern District of New York, for resolution.

[3] As noted, the district court denied the government's motion to stay the disqualification order on March 11, 2026. The United States did not renew its motion to stay the disqualification order before this Court at that time, given that this Court already had granted the government's motion to expedite the

*(footnote cont'd on next page)*

Conversely, NYOAG has no immunity from being investigated by the federal government. As the Court acknowledged in its decision, and as the district court emphasized below, the underlying investigation may still proceed under the direction of validly authorized officials. *See In re Grand Jury Subpoenas*, 2026 WL 2450485, at *16*; In re Grand Jury Subpoenas,* 2026 WL 686046, at *3. The relevant harm to NYOAG, then, is the harm of being subject to an investigation overseen *by Mr. Sarcone*. But until such time as the underlying investigation places any demands on NYOAG, or impedes it from taking any action, the harm to NYOAG remains entirely abstract, and is not judicially cognizable. *See, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (explaining that cognizable injury does not arise merely from an individual's "knowledge that a governmental agency was engaged in certain activities" or from the fear "that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual"); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (explaining that "fears of hypothetical future harm" from government action are insufficient to give rise

---

appeal, *see* Dkt. Nos. 9, 12, and no other motions to disqualify Mr. Sarcone had been filed in the Northern District of New York. The first such disqualification motion was filed on June 5, 2026, over a month *after* this Court heard oral argument in this matter. Now that the Court has affirmed the disqualification order, the United States has moved promptly to stay that order pending its filing of a petition for certiorari.

to cognizable injury). Moreover, NYOAG has no basis to suggest that an investigation led by Mr. Sarcone will be any more injurious to it than an investigation led by whoever the Attorney General designates to lead the investigation instead. And, in any event, such a speculative injury is far outweighed by the harm caused by the disqualification order to the functioning of the U.S. Attorney's Office.

Finally, the public interest favors a stay of the disqualification order. The attendant disruption to the United States's Attorney's Office necessarily establishes a strong public interest in staying that order. *See Nken*, 556 U.S. at 435. Further, investigative and prosecutorial decision-making is "the special province of the Executive Branch," *Heckler v. Chaney*, 470 U.S. 821, 832 (1985), and "[t]he separation of powers mandates judicial respect for the prosecutor's independence." *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1366 (9th Cir. 1987) (quotations and brackets omitted). The public interest in ensuring this principle is foundational. As the district court in *Garcia* aptly concluded, while "[t]he public certainly has an interest in a government that turns square corners and complies with the statutory commands of the FVRA … it also has an interest in avoiding unnecessary confrontations between the executive and judicial branches of government." Garcia Stay Order, at 3. As discussed, the

disqualification order already is being used by other parties in an effort to impinge prosecutorial independence.

For all these reasons, the balance of the equities here tips decidedly in favor of staying the disqualification order.

## III. CONCLUSION

The United States respectfully requests that the Court stay the mandate and the district court's order disqualification order, pending disposition of the United States's petition for certiorari in this case.

//

//

//

//

//

//

//

//

//

//

//

//

DATED: August 28, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

STANLEY WOODWARD
Associate Attorney General

HENRY C. WHITAKER
Counselor to the Attorney General

A. TYSEN DUVA
Assistant Attorney General

JOSH A. GOLDFOOT
Deputy Assistant Attorney General

/s/ *Rajit S. Dosanjh*
RAJIT S. DOSANJH
Chief, Appeals Division
United States Attorney's Office for the
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261-7198
(315) 448-0672
Rajit.S.Dosanjh@usdoj.gov