# 26-156

## United States Court of Appeals for the Second Circuit

IN RE GRAND JURY SUBPOENAS TO THE OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL,

*Petitioner-Appellee,*

v.

UNITED STATES OF AMERICA,

*Respondent-Appellant.*

On Appeal from the United States District Court for the Northern District of New York, Case No. 25-mc-19, Hon. Lorna G. Schofield

**OPPOSITION TO MOTION TO STAY THE MANDATE AND THE DISTRICT COURT'S DISQUALIFICATION ORDER PENDING PETITION FOR CERTIORARI**

BARBARA D. UNDERWOOD
*Solicitor General*
KUMIKI GIBSON
OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8000

DONALD B. VERRILLI, JR.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500E
Washington, DC 20001
Telephone: (202) 220-1100

HAILYN J. CHEN
VICTORIA A. DEGTYAREVA
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100

*Counsel for Petitioner-Appellee*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
BACKGROUND ........ 3
ARGUMENT ........ 6
I. DOJ Has Failed to Make the Exceptional Showing Required to Stay the Mandate. ........ 6
A. DOJ Fails to Show a Substantial Question. ........ 7
B. DOJ Has Not Come Close to Establishing Irreparable Injury. ........ 12
II. This Court Should Not Stay the Disqualification Order. ........ 14
A. DOJ Will Not Succeed on the Merits. ........ 15
B. DOJ Cannot Show Irreparable Harm. ........ 18
C. The Risk of Harm to OAG Weighs Powerfully Against a Stay. ........ 24
CONCLUSION ........ 26
CERTIFICATE OF COMPLIANCE ........ 27

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
35 F.4th 1328 (Fed. Cir. 2022) ........ 8, 9

*Camreta v. Greene*,
563 U.S. 692 (2011) ........ 7

*Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*,
948 F.3d 148 (3d Cir. 2020) ........ 25

*Citibank, N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) ........ 18, 19

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
598 F.3d 30 (2d Cir. 2010) ........ 16

*Dellinger v. Bessent*,
2025 WL 887518 (D.C. Cir. Mar. 10, 2025) ........ 23

*Doe v. Noem*,
2026 WL 544631 (2d Cir. Feb. 17, 2026) ........ 18, 19

*Donziger v. United States*,
143 S. Ct. 868 (2023) ........ 7

*In re Grand Jury Proceeding*,
971 F.3d 40 (2d Cir. 2020) ........ 13

*In re Grand Jury Subpoenas to the Off. of N.Y. State Att'y Gen.*,
2026 WL 2450485 (2d Cir. Aug. 21, 2026) ........ 5, 10, 23

*In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*,
2026 WL 686046 (N.D.N.Y. Mar. 11, 2026) ........ 4, 22, 23, 24

*In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*,
814 F. Supp. 3d 284 (N.D.N.Y. 2026) ........ 4

# TABLE OF AUTHORITIES
# (Continued)

**Page(s)**

*Hollingsworth v. Perry*,
558 U.S. 183 (2010) .......... 12, 14, 15

*Indiana State Police Pension Tr. v. Chrysler LLC*,
556 U.S. 960 (2009) .......... 6

*Lucia v. SEC*,
585 U.S. 237 (2018) .......... 25

*Mohamed v. Jones*,
100 F.4th 1214 (10th Cir. 2024) .......... 8

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) .......... 26

*Phillip v. Fairfield Univ.*,
118 F.3d 131 (2d Cir. 1997) .......... 20

*Richison v. Ernest Grp., Inc.*,
634 F.3d 1123 (10th Cir. 2011) .......... 17

*Ruckelshaus v. Monsanto Co.*,
463 U.S. 1315 (1983) .......... 14

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024) .......... 16

*United States v. Botti*,
711 F.3d 299 (2d Cir. 2013) .......... 16

*United States v. Giraud*,
160 F.4th 390 (3d Cir. 2025) .......... 8, 11

*United States v. Giraud*,
795 F. Supp. 3d 560 (D.N.J. 2025) .......... 20

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*United States v. Jackson*,
2026 WL 2387099 (9th Cir. Aug. 17, 2026) .................................... 8, 11

*United States v. Rathbun*,
98 F.4th 40 (1st Cir. 2024) ............................................................. 17

*United States v. Silver*,
954 F.3d 455 (2d Cir. 2020) .............................................. 6, 10, 12

*United States v. Williams*,
68 F.4th 564 (9th Cir. 2023) ............................................................ 22

*White v. Florida*,
458 U.S. 1301 (1982) ....................................................................... 18

*White v. Plappert*,
137 F.4th 579 (6th Cir. 2025) .......................................................... 14

*Williams v. Zbaraz*,
442 U.S. 1309 (1979) ................................................................. 14, 18

**FEDERAL STATUTES**

5 U.S.C. § 3345(a)(1) ............................................................... 10, 11

28 U.S.C. § 546(d) .............................................................................. 3

**FEDERAL RULES**

Fed. R. App. P. 41(d) ..................................................................... 6, 15

**OTHER AUTHORITIES**

U.S. Courts, Caseload Statistics Data Tables, Table No. D-3A (last visited Sept. 6, 2026), *available at* https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables ..................................................................... 20

## INTRODUCTION

Seven months ago, the district court rejected DOJ's request for a stay pending appeal of its order disqualifying John Sarcone III from overseeing or participating in investigations into the Office of the New York State Attorney General ("OAG"). In response, DOJ let the matter lie and did not seek a stay from this Court. Since then, multiple courts of appeals, including this Court, have endorsed the district court's analysis. And out of the hundreds of criminal defendants the U.S. Attorney's Office in the Northern District of New York is prosecuting, only two have sought to disqualify Sarcone.

DOJ must meet a "stringent and extraordinary standard" to justify this Court's intervention, but its arguments today are even weaker than they were before the district court. Every court of appeals to have ruled on the issue has concluded that the Executive Branch's attempt to install unconfirmed allies of the President as Acting U.S. Attorneys (in order to carry out a vindictive agenda of political retaliation) either by designating a first assistant to an already-vacant office or by delegating all the powers of the office to a person who has not been confirmed by the Senate violates the Federal Vacancies Reform Act ("FVRA") and the

constitutional values that it safeguards. Tellingly, DOJ does not even argue that the Supreme Court would reverse if it granted review.

DOJ also cannot show irreparable harm. That DOJ has waited all this time before approaching this Court for a stay alone refutes any assertion of irreparable harm. DOJ has been subject to the district court order for eight months, with no discernible effect on the government's ability to enforce the law. To the contrary, DOJ cannot identify *any* concrete harm it has suffered, other than the modest burden of responding to two motions challenging Sarcone's appointment. That meager showing only confirms what the district court anticipated when it denied DOJ's stay motion many months ago: that its order does not inflict irreparable harm. By the same token, the primary practical effect of this Court's affirmance of the district court's order is to protect OAG, the top law enforcement agency in the State of New York, from a genuine irreparable harm: the injury inflicted by DOJ's baseless, retaliatory, politically motivated, lawless, criminal investigations. There is thus no basis for a stay, and DOJ's motion should be denied.

## BACKGROUND

After the Senate-confirmed U.S. Attorney left office in February 2025, then-Attorney General Pam Bondi appointed John Sarcone III to serve as interim U.S. Attorney for the Northern District of New York. The applicable statute authorized him to serve in that role for 120 days. When Sarcone's term expired on July 14, 2025, the judges of the District Court for the Northern District of New York declined to extend his tenure. Undeterred, the Attorney General reassigned the incumbent First Assistant U.S. Attorney to create a vacancy in the First Assistant slot, installed Sarcone in that position, and claimed that, as a result, Sarcone was automatically elevated to the role of Acting U.S. Attorney pursuant to the FVRA.[1]

On August 5, 2025, purporting to exercise the authority of the office of U.S. Attorney, Sarcone obtained two grand jury subpoenas directed at OAG. The subpoenas sought all records related to OAG's enforcement actions against Donald J. Trump and the National Rifle Association. No

[1] The judges of the Northern District of New York later appointed Donald Kinsella to serve as U.S. Attorney on February 11, 2026 pursuant to 28 U.S.C. § 546(d), Opening Br. 3 n.1, but President Trump fired Kinsella the following day. *Id.*

other prosecutor signed the subpoenas, which instructed OAG to send documents to Sarcone directly.

OAG moved to quash the subpoenas. Among other arguments, it contended that Sarcone's purported service as Acting U.S. Attorney violated the FVRA and the Appointments Clause. OAG further submitted that Sarcone's improper appointment must be remedied by quashing the subpoenas and disqualifying him from investigating OAG.

The district court agreed. It rejected DOJ's argument that Sarcone automatically became the Acting U.S. Attorney under the FVRA when the Attorney General designated him first assistant to that already-vacant office. *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 814 F. Supp. 3d 284, 294 (N.D.N.Y. 2026). And it also held that DOJ could not circumvent the FVRA by delegating all the powers of the office to Sarcone. *Id.* at 297. The court quashed the subpoenas and disqualified Sarcone from further involvement in the investigations into OAG. *Id.* at 300. DOJ appealed.

In the meantime, DOJ sought a stay pending appeal. The district court denied the motion. *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 2026 WL 686046, at *6 (N.D.N.Y. Mar. 11, 2026). The court

explained that DOJ had "not demonstrated a strong likelihood of success on the merits." *Id.* at *5. It also reasoned that "[a]ny harm from the investigation-specific disqualification" of Sarcone "is abstract at best, whereas granting a stay would reinstate an official who acted without lawful authority—a clear injury" to OAG. *Id.*

DOJ did not seek a stay pending appeal from this Court. Accordingly, the disqualification order has remained in force since January 2026.

On the merits, this Court affirmed. The Court held that only a first assistant who is serving at the time a vacancy arises automatically becomes the acting official under the FVRA. *In re Grand Jury Subpoenas to the Off. of N.Y. State Att'y Gen.*, 2026 WL 2450485, at *12 (2d Cir. Aug. 21, 2026). Because Sarcone was not designated first assistant until months after the Senate-confirmed U.S. Attorney resigned, the FVRA did not authorize his service. *Id.* The Court also concluded that DOJ could not delegate every duty of the vacant office to Sarcone and thereby "functionally ma[ke] him the acting officer in all but name." *Id.* at *15. Finally, the Court held that the district court properly quashed the

subpoenas and that DOJ had forfeited any argument that disqualification was an inappropriate remedy. *Id.* at *16.

## ARGUMENT

### I. DOJ Has Failed to Make the Exceptional Showing Required to Stay the Mandate.

Rule 41(d) imposes a "stringent and extraordinary standard." *United States v. Silver*, 954 F.3d 455, 457 (2d Cir. 2020). DOJ must show both "a substantial question" and "good cause for a stay." Fed. R. App. P. 41(d)(1). For a "substantial question," DOJ must show "a reasonable probability that four justices will vote to grant certiorari" and "a fair prospect that five justices will vote to reverse." *Silver*, 954 F.3d at 458 (internal quotation marks omitted). For "good cause," DOJ must further establish "a likelihood that irreparable harm will result from the denial of a stay." *Indiana State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009) (citation omitted). And even if DOJ can make both showings, which it cannot, a stay is discretionary. *See id.* at 961. Because DOJ has failed to demonstrate a substantial question or good cause—and each failing is fatal—this Court should deny DOJ's motion to stay the mandate.

### A. DOJ Fails to Show a Substantial Question.

DOJ maintains that three features of this case make it worthy of Supreme Court review, but none shows a reasonable probability of certiorari. And DOJ does not even contend that the Supreme Court would disagree with the panel's analysis of the merits—an analysis that is in accord with the decision of every court of appeals that has addressed these questions.

1. Contrary to DOJ's suggestion, the mere existence of a separation-of-powers question does not create a reasonable probability of review. *See* Mot. 6-7. Citing the immediate reviewability of qualified immunity denials, DOJ asserts that "[t]he Supreme Court has acknowledged the importance of reviewing 'rulings that have a significant future effect on the conduct of public officials and the policies of the government units to which they belong.'" *Id.* at 6 (quoting *Camreta v. Greene*, 563 U.S. 692, 704 (2011) (alterations accepted)). But talismanic invocation of "the separation of powers" does not establish that a case is worthy of Supreme Court review. *See, e.g.*, *Donziger v. United States*, 143 S. Ct. 868 (2023) (denying certiorari). That separation-of-powers concerns are involved is not even sufficient to

necessarily implicate the collateral order doctrine, *see Mohamed v. Jones*, 100 F.4th 1214, 1233 (10th Cir. 2024)—let alone to automatically warrant Supreme Court review.

2. There is no circuit conflict that would warrant a grant of certiorari. Every court of appeals to have considered the question has reached the same conclusion as this Court. *See United States v. Jackson*, 2026 WL 2387099 (9th Cir. Aug. 17, 2026); *United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025).

DOJ misreads *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), to manufacture a circuit split. Pointing to *Arthrex*, DOJ claims the panel's decision "deepens a circuit split over the interpretation of the FVRA." Mot. 7. But that claim is farfetched.

In *Arthrex*, the Federal Circuit held that the delegation of authority to review requests for rehearing before the Patent & Trademark Office ("PTO") did not violate the FVRA. 35 F.4th at 1339. Although DOJ describes *Arthrex* as holding "that the FVRA does *not* bar the wholesale delegation of all of an office's delegable powers to a non-acting official," Mot. 7, the Federal Circuit's decision held no such thing. The Federal Circuit expressly limited its decision "to a determination that the [PTO]

Director's authority to review rehearing requests is a delegable duty." *Arthrex*, 35 F.4th at 1339 & n.5. To be sure, *Arthrex* noted that the FVRA does not restrict who may perform a PAS officer's delegable duties, and the federal government argued there, as it does here, that all the Director's duties are delegable. *Id.* at 1338-1339 & n.5. But the court found such a limited interpretation of the FVRA "disquieting," and confined its holding to the specific issue of "the duty to decide rehearing requests"—"the only power at issue." *Id.* at 1337, 1339 & n.5. That is obviously not a holding in conflict with the decision of this Court in this case.

3. That the panel's decision affects Executive Branch practice does not create a reasonable probability of review. DOJ contends that a stay is warranted because the Court's decision "disrupts [the] settled executive practice" of allowing non-incumbents to assume the role of an acting PAS officer. Mot. 8. But the bare fact that a ruling affects Executive-Branch practice does not make Supreme Court review reasonably probable. And, in any event, DOJ's argument exaggerates the magnitude of adjustment necessary here. DOJ identified only 31 examples from the Department of Justice across the administrations of

Presidents Bush, Obama, Trump, and Biden. *See In re Grand Jury Subpoenas*, 2026 WL 2450485, at *20 (Park, J., dissenting). That hardly establishes that this panel's ruling amounts to the sort of sea change that requires Supreme Court intervention.

4. Moreover, even if DOJ were able to show a reasonable probability that the Supreme Court would grant review, its motion does not even try to establish that there is "a fair prospect" that the Supreme Court will reverse the panel's decision. *Silver*, 954 F.3d at 458. This Court correctly held that only the first assistant in office at the time a vacancy arises may assume the acting role under § 3345(a)(1). As the Court explained, the "[t]ext, structure, and history" of the FVRA all point to that conclusion. *In re Grand Jury Subpoenas*, 2026 WL 2450485, at *12. Indeed, the Court made clear that any other interpretation of the FVRA would "turn [the statute's] common-sense framework on its head." *Id.* at *6-7.

This Court was also correct to block the Attorney General from installing a de facto Acting U.S. Attorney through delegation. As this Court explained, a "straightforward application" of the FVRA's exclusivity provision prohibits the Attorney General from delegating all

the authorities of the U.S. Attorney's Office to a single person and "functionally ma[king]" them the "acting officer in all but name." *Id.* at *13, *15. And DOJ's argument also makes no sense as a structural matter. It would permit an Acting U.S. Attorney to exercise the powers of the office "indefinitely"—an untenable interpretation of a statutory scheme intended to reassert the Senate's authority over appointments by limiting both who can serve in an acting capacity and the length of any such service. *Id.* at *13 (emphasis omitted).

The courts of appeals agree on each point. Both the Third and Ninth Circuits—the only other appellate courts that have addressed these questions—have also concluded that the Attorney General may not use § 3345(a)(1) to elevate a post-vacancy first assistant to the acting role. *Jackson*, 2026 WL 2387099, at *3, *5-11; *Giraud*, 160 F.4th at 397-401. And, like this Court, each flatly rejected DOJ's fallback delegation argument. *Jackson*, 2026 WL 2387099, at *11-13; *Giraud*, 160 F.4th at 402-406.

DOJ says nothing about that persuasive consensus. Indeed, it makes no effort whatsoever to challenge the panel's analysis. It discusses the "importance" of the separation of powers, Mot. 6, but does not argue

that this feature of the case is relevant to the merits. It does not defend the Federal Circuit's reasoning in *Arthrex* or make the case that five Justices of the Supreme Court might endorse that analysis. And it openly admits that it makes an argument about the "disrupt[ion] [of] settled executive practice" to illustrate the case is "important"—not to contend with the majority's reasoning. Mot. 8. As a result, there is simply "[n]othing in [DOJ's] motion" to "suggest[] that the Supreme Court would disagree" with this Court's analysis. *Silver*, 954 F.3d at 458.

### B. DOJ Has Not Come Close to Establishing Irreparable Injury.

DOJ must also establish "a likelihood that irreparable harm will result from the denial of a stay." *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). It has failed to make that showing here.

Issuing the mandate in this case would not injure DOJ at all—much less irreparably. Contrary to DOJ's assertion, neither the district court nor this Court entered any "decision disqualifying Mr. Sarcone *in his position as FAUSA*." Mot. 9 (emphasis added). The judgment this Court affirmed disqualifies Mr. Sarcone from only the two investigations involving OAG. A:2285. Thus, beyond those two investigations, issuance of the mandate would not "materially affect the supervision of civil and

criminal matters in the Northern District of New York." Mot. 9. It may be that, in anticipation of the possibility that other district courts would adopt the district court's ruling while the appeal was pending, the U.S. Attorney's Office reassigned supervisory responsibilities over other matters. But if it did so, that was simply a prudential response to the legal vulnerability the district court identified. DOJ does not suggest that any such efforts would irreparably harm the Office's ability to carry out its responsibilities, and any such suggestion would be implausible. Nothing in the district court's order required the U.S. Attorney's Office to take that step. And allowing the mandate to issue would not, in and of itself, compel the Office to stick to that course.

Even as to the underlying investigations in this case, it is unclear what injury DOJ believes a stay would prevent. Although DOJ cannot enforce the subpoenas, a stay would not change that reality. The grand jury that originally issued the subpoenas has been discharged. Respondent-Appellant's Rule 28(j) Letter, ECF No. 87. The subpoenas are therefore unenforceable, whether the mandate issues or not. *See In re Grand Jury Proceeding*, 971 F.3d 40, 50 (2d Cir. 2020). Likewise, staying the mandate would leave the district court's order in effect;

Sarcone still could not participate in the investigations. And DOJ has not identified any harm that would stem from the mandate itself.

Because DOJ has not demonstrated any irreparable harm, its motion for a stay of the mandate should be denied on that basis alone. *See*, *e.g.*, *Ruckelshaus v. Monsanto Co.*, 463 U.S. 1315, 1317 (1983) (Blackmun, J.) ("An applicant's likelihood of success on the merits need not be considered, however, if the applicant fails to show irreparable injury."); *White v. Plappert*, 137 F.4th 579, 581 (6th Cir. 2025) (same).

## II. This Court Should Not Stay the Disqualification Order.

Regardless of whether this Court stays the mandate, it certainly should not stay the district court's order disqualifying Sarcone. A stay pending Supreme Court review is "granted only in extraordinary circumstances." *Williams v. Zbaraz*, 442 U.S. 1309, 1311 (1979) (Stevens, J.). An applicant seeking that relief thus bears the same "heavy burden" that governs a motion to stay the mandate: the applicant must demonstrate that it is likely to succeed on the merits before the Supreme Court and will suffer irreparable harm unless a stay enters. *Id.*; *Hollingsworth*, 558 U.S. at 190. And while DOJ makes somewhat different arguments about each prong of that test than it does in

connection with its request to stay the mandate, it still comes up short on each score.

### A. DOJ Will Not Succeed on the Merits.

To show it is likely to succeed on the merits before the Supreme Court, DOJ would have to establish that there is both a "reasonable probability" that certiorari will be granted and a "fair prospect" that the Court will reverse on the merits. *Hollingsworth*, 558 U.S. at 190. As explained above, neither exists here. *See supra*, at pp. 6-12.

DOJ fights that standard, insisting that it only needs to establish that this case raises "serious questions" on the merits to obtain a stay of the disqualification order. Mot. 11. But that is not the test. The law is clear that to stay a district court's order pending Supreme Court review, the Court requires an applicant to show not only a "reasonable probability" the Supreme Court will grant review, but also a "fair prospect" that the Court will reverse. *Hollingsworth*, 558 U.S. at 190. Yet, tellingly, in discussing its request for a stay of the disqualification order, DOJ inexplicably switches from addressing that standard—which also governs the Rule 41(d) aspect of its motion—to the "serious questions" standard. Mot. 10. But to raise "serious questions," a party

need only show that the case presents "a fair ground for litigation and thus for more deliberate investigation"—not a likelihood of reversal by the Supreme Court. *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 83 (2d Cir. 2024) (citation omitted). That materially lower standard governs a motion for a preliminary injunction, and—at most—a motion for a stay pending review by the court of appeals. *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35-37 (2d Cir. 2010); *see id.* at 37 (noting that the "standard for granting a stay pending appeal . . . overlap[s] substantially with the preliminary injunction standard"). DOJ does not identify any authority applying that standard in this context, after a party has already lost before the Court of Appeals.

DOJ's focus on "serious questions"—and its failure to engage with the "fair prospect of reversal" standard—dooms its request for a stay of the disqualification order. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Botti*, 711 F.3d 299, 313 (2d Cir. 2013) (citation omitted). DOJ contends only that the "issues raised here" are "highly contested." Mot. 11. It ignores the uniformity of the decisions rendered

by the three courts of appeals addressing the issue and fails to engage with the substance of this case, much less develop the argument that five Justices would embrace its position. That alone is reason enough to decline to enter a stay. *See, e.g.*, *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130-1131 (10th Cir. 2011) (finding argument forfeited where appellant had not "even attempted to show" he could prevail under the applicable test); *United States v. Rathbun*, 98 F.4th 40, 57-58 (1st Cir. 2024) (same).

Neither DOJ's misconceived assertions that *Arthrex* created a split of authority nor the panel dissent can fill the gap in DOJ's argument. It makes no attempt to argue that a split necessarily establishes that reversal is likely. And, in any event, as explained above, there is simply no split among the courts of appeals here. *See supra*, at pp. 8-9. The panel dissent does not help DOJ, either. Although DOJ emphasizes that a "strenuous dissent" exists, Mot. 11, it does not even try to make the case that the mere existence of a dissent establishes a sufficient probability of reversal. Nor could it. Such a conclusion would dilute the stay standard beyond recognition. Panel dissents are common; stays

pending Supreme Court review are supposed to be rare. *Williams*, 442 U.S. at 1311.

### B. DOJ Cannot Show Irreparable Harm.

DOJ has also failed to demonstrate that it will be irreparably injured without a stay. It is not enough for an applicant to show that the federal government "may suffer irreparable harm at some point in the future." *White v. Florida*, 458 U.S. 1301, 1302 (1982) (Powell, J.). Instead, DOJ must point to "an injury that is neither remote nor speculative, but actual and imminent." *Doe v. Noem*, 2026 WL 544631, at *2 (2d Cir. Feb. 17, 2026) (citation omitted).

But DOJ's own conduct establishes that it does not fear any such impending harm. After the district court disqualified Sarcone, DOJ waited two weeks to ask the district court for a stay. A:2286, A:2307. And when the district court denied its motion, DOJ declined to seek relief from this Court. Instead, DOJ operated under the disqualification order for five months—while the appeal was briefed, through oral argument, and until this Court issued its decision. That lax attitude hardly reflects the sort of exigency necessary to justify the "extraordinary" remedy of a stay. *Williams*, 442 U.S. at 1311; *Citibank, N.A. v. Citytrust*, 756 F.2d

273, 277 (2d Cir. 1985) ("[The movant's] failure to act sooner . . . suggests that there is, in fact, no irreparable injury." (citation omitted)).

DOJ's explanation for its delay only undermines its irreparable harm argument. It represents that it did not seek a stay pending appeal from this Court earlier because it has only recently begun to feel any concrete effects from the district court's order. *See* Mot. 14 & n.3. If the district court's January order inflicted irreparable harm on DOJ, one would think that the past eight months would have generated some evidence of injury. And yet the only concrete harm DOJ claims is two criminal defendants' motions to disqualify Sarcone from their prosecutions, which have yet to be decided. *Id.* at 13-14; *see also id.* at 15 n.3 (noting that the first disqualification motion was "filed on June 5, 2026"—five months after the district court ruled). The lack of any arguable pattern of disruption refutes DOJ's insistence that the sky will fall without a stay.

DOJ's submission that further disqualification motions are "likely," *id.* at 14, is no more persuasive. That "speculative" contention does not establish irreparable harm. *Doe*, 2026 WL 544631, at *2. It is far from certain that DOJ will be forced to contend with an onslaught of

disqualification motions, or that every criminal defendant will be able to make the case for judicial intervention. *Cf., e.g.*, *United States v. Giraud*, 795 F. Supp. 3d 560, 604-06 (D.N.J. 2025) (declining to dismiss indictment or allow discovery into whether Alina Habba played a role in obtaining it). Indeed, that only two out of hundreds of criminal defendants or subpoena recipients have raised the unlawfulness of Sarcone's appointment in the eight months since the district court's order belies DOJ's claim that a deluge of motions is imminent.[2]

In any event, even if DOJ could make a concrete showing that a meaningful number of other litigants will seek to disqualify Sarcone, that purported injury still would not support a stay. Equitable relief is not appropriate where it would make no difference. *See Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997). A stay would not prevent other litigants from seeking to disqualify Sarcone. It would not alter the precedential value of this Court's opinion; it would have effect in this case

[2] According to the U.S. Courts, 400 felony cases commenced in the U.S. District Court for the Northern District of New York in the twelve-month period before June 30, 2026. *See* U.S. Courts, Caseload Statistics Data Tables, Table No. D-3A (last visited Sept. 6, 2026), *available at* https://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables.

only. *See* Order, ECF No. 63, *United States v. Jackson*, No. 25-6214 (9th Cir. Aug. 21, 2026) (denying motion to stay the "precedential effect of the panel decision" because "eliminating its precedential effect would effectively require vacating the opinion"). And while DOJ insists that a stay would "discourage the filing of more disqualification motions," Mot. 14, that argument falls flat. If a defense attorney believes a client could bring a meaningful challenge to Sarcone's involvement in their prosecution, that attorney will seek relief based on this Court's binding precedent and the various persuasive opinions of courts across the country (not to mention the overwhelming likelihood that the Supreme Court will deny review or affirm). The notion that the attorney would be dissuaded from filing a potentially meritorious motion because one aspect of the district court's order is on ice pending the outside possibility of further review is not serious.

Ultimately, DOJ is simply contending that entering a stay would deter defendants from challenging conduct this Court has held unlawful. The suggestion that this Court would view that as a positive feature of a stay is just more evidence DOJ is on the wrong side of this argument.

DOJ's remaining efforts to establish irreparable harm are hopelessly abstract. It maintains that it is injured by the "disruption" of the "chain of command" and harm to the separation of powers. Mot. 12, 16. But the district court correctly rejected those precise arguments when it refused to enter a stay pending appeal. It explained that the same "abstract invocations carry little weight without concrete disruption," and that DOJ "ha[d] not identified any concrete harm that would result from a denial of a stay." *In re Grand Jury Subpoenas*, 2026 WL 686046, at *5 (collecting cases). The district court's reasoning is even more compelling today, as DOJ *still* has not made a non-trivial showing of concrete interference, notwithstanding the reality that the disqualification order has been on the books since January.

DOJ relies on *United States v. Williams*, 68 F.4th 564 (9th Cir. 2023), but such reliance is completely misplaced. *Williams* involved a far more sweeping intrusion—that is, an order disqualifying *all 180 prosecutors* in a U.S. Attorney's Office from a criminal trial. 68 F.4th at 569. And while the Ninth Circuit held that it would be "too late" for the court "to undo any improper encroachment" if the government appealed after final judgment, because by then the trial would have concluded

without the disqualified prosecutors, *id.* at 570, that is not true here. DOJ has not identified any reason why the OAG investigations necessarily have to proceed while Sarcone's appointment is litigated. To the contrary, its representation that it would not enforce the subpoenas during the pendency of the appeal undermines any claim that these investigations are urgent. *See In re Grand Jury Subpoenas*, 2026 WL 686046, at *4.

For similar reasons, *Dellinger v. Bessent*, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025), is also off-point. DOJ invokes it for the proposition that it is "impossible to unwind the days in which Mr. Sarcone . . . has been prevented from overseeing the investigation" into OAG. Mot. 13. But if Sarcone's personal involvement in these investigations were critical, one would expect DOJ to have preserved an argument that his disqualification was an improper remedy even if he was unlawfully serving as Acting U.S. Attorney. Instead, DOJ forfeited any standalone challenge to Sarcone's disqualification. *See In re Grand Jury Subpoenas*, 2026 WL 2450485, at *16 & n.6; Mot. 4 n.1.

In any event, it is true for any injunction that subsequent appellate review will not turn back the clock. The problem for DOJ is that the

disqualification order, in and of itself, has limited real-world effect. As the district court made clear when it denied DOJ's motion for a stay in March, nothing in its decision prevents DOJ from "continu[ing] the instant investigations . . . through lawfully authorized officials." *In re Grand Jury Subpoenas*, 2026 WL 686046, at *3. The sole consequence of the order itself is that either a different prosecutor must supervise the OAG investigations or the Office of the U.S. Attorney must hold off until the Supreme Court acts. And, once again, DOJ has not identified any prejudice from being put to that choice.[3]

### C. The Risk of Harm to OAG Weighs Powerfully Against a Stay.

OAG, by contrast, would suffer substantial irreparable harm if the disqualification order were stayed. Being subjected to government action

---

[3] OAG submits that there are other reasons DOJ cannot enforce these subpoenas or pursue these investigations. *See* A:30-45, A:48-50 (making clear that the subpoenas were retaliatory, intruded on New York's sovereignty, infringed on OAG's First Amendment rights, sought privileged information, and were overbroad and unduly burdensome). Practically speaking, those other obstacles to proceeding might explain why the Attorney General has not reassigned these matters or tried to obtain new subpoenas. But those obstacles do not flow from the order DOJ seeks to stay and are not relevant at this juncture. That the investigations are unlawful many times over is hardly a reason to allow Sarcone to pursue them.

that is undertaken without lawful authority is a grave and cognizable injury. *See Lucia v. SEC*, 585 U.S. 237, 251 (2018) ("'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." (citation omitted)); *Cirko ex rel. Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 154 (3d Cir. 2020). And the circumstances of this case compound the structural injury here. There is no room to doubt that DOJ requests a stay in order to permit Sarcone to resume his politically motivated, constitutionally untenable investigations into OAG. The irreparable harm that would flow is self-evident.

As a result, DOJ's contention that OAG should not be concerned about the prospect of Sarcone's renewed participation is barely short of frivolous. DOJ maintains that OAG "has no basis to suggest that an investigation led by Mr. Sarcone will be any more injurious to it than an investigation led by whoever the Attorney General designates" as an alternative. Mot. 16. But that ignores the fundamental premise underlying the Appointments Clause and the FVRA—that it does, in fact, matter who leads the institutions of the federal government, and that "the appointment of unfit characters" can have devastating consequences

for both the separation of powers and the preservation of individual liberty. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017); *see also id.* at 317 (Thomas, J., concurring).

## CONCLUSION

This Court should deny DOJ's motion.

DATED: September 8, 2026

MUNGER, TOLLES & OLSON LLP

By: */s/ Donald B. Verrilli, Jr.*

DONALD B. VERRILLI, JR.
MUNGER, TOLLES & OLSON LLP
601 Massachusetts Avenue NW
Suite 500E
Washington, DC 20001
Telephone: (202) 220-1100

HAILYN J. CHEN
VICTORIA A. DEGTYAREVA
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071
Telephone: (213) 683-9100

BARBARA D. UNDERWOOD
*Solicitor General*
KUMIKI GIBSON
OFFICE OF THE NEW YORK STATE
ATTORNEY GENERAL
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-8000

*Counsel for Petitioner-Appellee*

## CERTIFICATE OF COMPLIANCE

1. This Opposition to Motion to Stay the Mandate and the District Court's Disqualification Order Pending Petition for Certiorari complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because the body of the response contains 5173 words, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f).

2. This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Century Schoolbook 14-point font.

DATED: September 8, 2026 By: /s/ *Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.